PEOPLE v REHKOPF

PEOPLE v SNYDER

Docket Nos. 69219, 69819. Argued May 8, 1984 (Calendar Nos. 13, 14). Resubmitted April 18, 1985.—Decided June 25, 1985.

Vicki Rehkopf was charged in the Kent Circuit Court with inciting, inducing, or exhorting an undercover policeman to kill her husband. The court, Robert A. Benson, J., denied the defendant's motion to quash the information, holding that the fact that the murder was unlikely to occur was irrelevant to the defendant's culpability under the incitement statute. The Court of Appeals, DANHOF, C.J., and BRONSON and CYNAR, JJ., denied leave to appeal (Docket No. 63700). The defendant appeals, limited to the question whether the crime of inciting, inducing, or exhorting another to commit a dangerous felony includes as a necessary element the requirement that the inciting, inducing, or exhorting have occurred under circumstances that would be likely to produce the result incited, induced, or exhorted.

John F. Snyder was convicted by a jury in the Kent Circuit Court, Robert A. Benson, J., of inciting first-degree murder. Following trial, the defendant moved for a declaration that the incitement statute did not require mandatory life imprisonment for incitement to commit first-degree murder or that such a sentence was unconstitutional as cruel and unusual punishment and as a denial of equal protection. The court, finding a life sentence in the case to be cruel and unusual punishment, imposed a sentence of fifteen to thirty years imprisonment. The Court of Appeals, R. B. BURNS, P.J., and T. M. BURNS and ALLEN, JJ., peremptorily reversed and remanded for resentencing to mandatory life imprisonment (Docket No. 64598). The defendant appeals. The Supreme Court granted leave to appeal to resolve the issues (1) whether the Court of Appeals could

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law § 158 *et seq.*

[2] 21 Am Jur 2d, Criminal Law § 166.

[3, 4] 21 Am Jur 2d, Criminal Law §§ 3, 4, 130.

[5] 21 Am Jur 2d, Criminal Law § 627.

[6] 21 Am Jur 2d, Criminal Law §§ 358, 557 *et seq.*

properly entertain a prosecutor's appeal in the case, (2) whether the Legislature intended the crime of incitement to commit first-degree murder to be punishable by life imprisonment, and (3) whether a punishment of life imprisonment for inciting to murder is cruel and unusual punishment or a denial of equal protection of the laws.

In an opinion by Justice LEVIN, joined by Justices RYAN, BRICKLEY, CAVANAGH, and RILEY, the Supreme Court *held:*

A person who does no more than utter words urging another to commit murder which do not result in the commission of or an attempt to commit murder is subject to liability only for the common-law offense of solicitation.

1. Section 157b of the Penal Code which proscribes the inciting, inducing, or exhorting of another person to commit certain enumerated life-endangering offenses, including murder, and which provides for punishment in the same manner as if the offense actually had been committed is ambiguous. The words "incites," "induces," and "exhorts" as used in the statute cannot be reconciled to provide a literal reading of each. Such ambiguity generally results in a search for the construction of the statute that appears most likely in accord with its legislative purpose in light of all the circumstances. In penal statutes, moreover, ambiguity requires application of the rule of lenity.

2. Section 157b should be construed as a special kind of accomplice statute. At common law, general urgings to commit a crime could subject the speaker to liability for solicitation, but could fail to provide sufficient nexus to establish complicity in offenses actually committed; accomplice liability could attach where a speaker's specific urgings *caused commission of an offense.* Section 157b was added to the Penal Code in the wake of civil disturbances to fill a gap that existed in the scope of accomplice liability. It provides for punishment of general urgings to commit life-endangering crimes without regard to whether there was further nexus or concert of action between the speaker and the person who actually committed the crime. After enactment of § 157b, a general urging to a crowd or gathering that in fact resulted in the commission of a crime enumerated in the statute would subject the speaker to criminal liability as an accomplice.

3. Construction of § 157b as a special kind of accomplice statute is consistent with its legislative history. Substitute bills offered by the House for the Senate bill that became § 157b that clearly addressed solicitations were rejected in favor of language designed to enlarge the scope of accomplice liability in certain limited situations. Also rejected was a proposed

Senate substitute addressing accomplice liability in general in favor of provisions enlarging punishment when certain dangerous felonies and misdemeanors were involved. Also instructive is a comparison of the penalties prescribed for aiding and abetting the institution or maintenance of a riot, enacted at the same time as § 157b, with those of § 157b. If § 157b were to apply to the mere urging of the offenses enumerated within it, including murder, without requiring that the offense actually be committed or attempted, the maximum penalty for a solicitation under § 157b could be life imprisonment or any term of years. Solicitation of violent or dangerous felonies with the intent to incite a riot, for which a maximum penalty of ten years imprisonment and a fine is prescribed, would then be punished by a lesser penalty than solicitation to commit the same felonies without the added danger of a riot. The fact that such punishment for urgings to commit life-endangering offenses that are not in fact committed or attempted would be far greater than that prescribed in almost every other jurisdiction further suggests that § 157b was intended for conduct more heinous than solicitation. In these cases, the defendants' conduct did not result in the commission or attempt to commit murder; thus, neither defendant could properly be convicted of violating § 157b.

*Rehkopf*, reversed.

*Snyder*, reversed.

Justice BOYLE, joined by Chief Justice WILLIAMS, dissenting, stated that the crime of inciting, inducing, or exhorting the commission of a crime enumerated in § 157b of the Penal Code is complete upon the inciting, exhorting, or urging of the conduct specified; proof of actual incitement or of an overt act by a third party is not necessary. Incitement to commit first- or second-degree murder is punishable by imprisonment for life or any term of years, and the penalty is neither cruel and unusual nor a denial of equal protection. Where a trial court refuses to impose the sentence required by the code, a prosecutor may properly challenge the refusal on appeal.

1. Under the incitement statute, the only conduct that need be proved on the part of the person charged is the inciting, inducing, or exhorting of a third party to commit one of the offenses enumerated in the statute. Conduct by which a person urges another to commit a specified crime with the intent that the crime result is the focus of the offense. The operative language "incites, induces or exhorts" in terms permits conviction upon mere words spoken with requisite intent. It is not

necessary that the solicitation result in actual incitement or completion of the offense solicited.

2. "Murder" and "kill" as used in the incitement statute are to be interpreted according to their natural, common-law meanings. The penalty for incitement of those crimes is that provided for their statutory equivalents. For incitement to commit murder, the maximum penalty is that provided for second-degree murder: life or any term of years. The penalty is not, on its face, so grossly disproportionate to the severity of the crime as to constitute cruel or unusual punishment.

3. Review by the Court of Appeals of a refusal of a trial court to impose sentence in accordance with statutory requirements is authorized by the Court's jurisdiction to issue orders of superintending control in situations where an inferior court has acted without authority or has failed to act where it has a clear duty to do so. Moreover, an improperly denominated pleading may be treated as a complaint for an order of superintending control under appropriate circumstances such as those in *Snyder*.

### Opinion of the Court

1. Criminal Law — Incitement — Solicitation — Murder.

A person who does no more than utter words urging another to commit murder which do not result in the commission of or an attempt to commit murder is subject to liability only for the common-law offense of solicitation (MCL 750.157b; MSA 28.354[2]).

2. Criminal Law — Incitement — Accomplices.

A person who generally urges a crowd or gathering to commit an offense enumerated in the section of the Penal Code proscribing incitement of life-endangering offenses that in fact results in the commission or an attempt to commit such an offense is liable as an accomplice (MCL 750.157b; MSA 28.354[2]).

### Dissenting Opinion by Boyle, J.

3. Criminal Law — Incitement — Elements of Crime.

*The crime of inciting, inducing, or exhorting the commission of a crime enumerated in § 157b of the Penal Code is complete upon the inciting, exhorting, or urging of the conduct specified; proof of actual incitement or of an overt act by a third party is not necessary (MCL 750.157b; MSA 28.354[2]).*

4. Criminal Law — Incitement — Elements of Crime.

*The only conduct on the part of a person charged with incitement*

of a crime enumerated in the incitement statute that need be proved is the inciting, inducing, or exhorting of a third party to commit one of the enumerated offenses; the focus of the offense is on the conduct by which a person urges another to commit a specified crime with the intent that the crime result; the operative language "incites, induces or exhorts" in terms permits conviction upon mere words spoken with requisite intent, and it is not necessary that the solicitation result in actual incitement or completion of the offense solicited (MCL 750.157b; MSA 28.354[2]).

5. CRIMINAL LAW — INCITEMENT — MURDER — PENALTY.

The penalty for incitement to commit murder is that provided for second-degree murder, the statutory equivalent of common-law murder: life or any term of years; the penalty is not, on its face, so grossly disproportionate to the severity of the crime as to constitute cruel or unusual punishment (MCL 750.157b; MSA 28.354[2]).

6. CRIMINAL LAW — SUPERINTENDING CONTROL — FAILURE TO IMPOSE SENTENCE.

Review by the Court of Appeals of a refusal of a trial court to impose sentence in accordance with statutory requirements is authorized by the Court's jurisdiction to issue orders of superintending control in situations where an inferior court has acted without authority or has failed to act where it has a clear duty to do so (MCL 750.157b; MSA 28.354[2]; GCR 1963, 711.4).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, for the people in *Snyder,* and *Dennis B. Leiber,* Assistant Prosecuting Attorney, for the people in *Rehkopf.*

*Catchick & Dodge* (by *David A. Dodge*) and *Varnum, Riddering, Schmidt & Howlett* (by *Dennis C. Kolenda*) for defendant Rehkopf.

*George S. Buth* for defendant Snyder.

LEVIN, J. The principal issue presented by these consolidated appeals concerns the elements of the

statutory offense of inciting, inducing, or exhorting another person to commit murder.

## I

Section 157b of the Penal Code provides that a person who "incites, induces or exhorts" another person to commit certain enumerated offenses, including murder, "shall be punished in the same manner as if he had committed the offense, incited, induced or exhorted."[1] In each of the instant consolidated cases, the defendant was charged with violating § 157b under circumstances where the contemplated murder was not committed or attempted and thus the contemplated victim was not injured.

## A

Vicki Rehkopf was charged with inciting, inducing, or exhorting an undercover police officer to murder her husband, Robert Rehkopf. Before trial, Rehkopf moved to quash, arguing that since an undercover police officer would not commit murder, a necessary element of the offense—that the intended result be likely to occur—was absent. The circuit judge denied the motion and the Court of Appeals denied leave to appeal.

## B

John Frederick Snyder was charged with conspiracy[2] to commit murder and with inciting, inducing, or exhorting another person to murder his

---

[1] "Any person who incites, induces or exhorts any other person to unlawfully burn any property, to murder, to kill, to wound or to commit an aggravated or felonious assault on any person or to do any act which would constitute a felony or circuit court misdemeanor, that may endanger or be likely to endanger the life of any person, or who aids and abets in any such inciting, inducing or exhorting shall be punished in the same manner as if he had committed the offense, incited, induced or exhorted." MCL 750.157b; MSA 28.354(2).

[2] MCL 750.157a; MSA 28.354(1).

brother, Arnold Snyder. The conspiracy count was dismissed following the preliminary examination. A jury found Snyder guilty of violating § 157b.

Before sentencing, Snyder moved that the sentence imposed be consistent with his assertion that § 157b of the Penal Code does not require a mandatory life sentence on conviction of inciting, inducing, or exhorting another person to commit murder, or, if it does, that such a mandatory life sentence would constitute cruel or unusual punishment and a denial of equal protection. The circuit judge granted the motion and sentenced Snyder to fifteen to thirty years in prison. The prosecutor filed an application for leave to appeal, and the Court of Appeals peremptorily reversed and remanded for resentencing to mandatory life imprisonment.

## II

The legislative history of § 157b of the Penal Code, the circumstances that led to its enactment, and the punishment for solicitation prescribed in other jurisdictions suggest that § 157b is a special kind of accomplice statute designed to enlarge the scope of accomplice liability in certain limited situations, and not a codification of the common-law offense of solicitation[3] enlarging the punish-

---

[3] At common law, a person who solicited another to commit a felony (or a serious misdemeanor that would breach the peace) was guilty of a misdemeanor. *King v Higgins,* 2 East 3; 102 Eng Rep 269 (1801); see LaFave & Scott, Criminal Law, § 58, p 415; Perkins & Boyce, Criminal Law (3d ed), pp 648-649. (Alternative descriptions of the requisite *actus reus* include advised, commanded, counseled, encouraged, enticed, entreated, importuned, incited, instigated, procured, requested, and urged. See LaFave & Scott, § 58, p 419.) .

Solicitation remains a common-law offense in Michigan for which a maximum of five years imprisonment and a $10,000 fine may be imposed. MCL 750.505; MSA 28.773.

If a person solicits another to commit an offense, and if the listener acts on the solicitation, the speaker is liable as an accomplice and, as

ment when certain dangerous felonies and misdemeanors are involved.[4]

We hold that § 157b does not subject a person to criminal responsibility for utterances that do not result in the commission of the offense sought to be committed. A person who does no more than utter words seeking the commission of an offense is subject to liability only for the common-law offense of solicitation.[5]

such, may be punished as if he had directly committed the offense. MCL 767.39; MSA 28.979 (see n 9 for text).

An accomplice is charged and punished as a principal. *People v Wycoff*, 150 Mich 449, 451; 114 NW 242 (1907); *People v Smith*, 271 Mich 553, 557-558, 561; 260 NW 911 (1935). As a principal, an accomplice may be found guilty of the substantive offense committed by the actor. Thus, if the listener/actor does not succeed in committing the solicited offense, the speaker is an accomplice only to an attempt. With the exception of attempted murder, MCL 750.91; MSA 28.286, conviction of a criminal attempt carries a lesser maximum penalty than conviction for the completed offense. MCL 750.92; MSA 28.287. (The maximum penalty for attempted murder is less than the mandatory life sentence for first-degree murder, MCL 750.316; MSA 28.548, but is the same as the maximum penalty for second-degree murder, MCL 750.317; MSA 28.549.)

If the listener agrees to the speaker's solicitation to commit an offense, both might be found guilty of conspiracy. MCL 750.157a; MSA 28.354(1). See *People v Atley*, 392 Mich 298, 311; 220 NW2d 465 (1974). If the listener does not agree to the solicitation and possesses no intention of committing or attempting to commit the solicited offense, the speaker might, nonetheless, properly be found guilty of the common-law offense of solicitation. See LaFave & Scott, § 58, p 414; Perkins & Boyce, p 649.

While accomplice liability requires proof that the principal actor is guilty of the completed criminal offense, see *People v Mann*, 395 Mich 472, 478; 236 NW2d 509 (1975); *People v DeBolt*, 269 Mich 39, 45; 256 NW 615 (1934); LaFave & Scott, § 65, p 517, the offense of solicitation is complete as soon as the speaker, with intent that another person commit a felony or serious misdemeanor, solicits that person to commit the crime. Solicitation is punishable without regard to its consequences. The solicited offense need not be consummated or even attempted; nor indeed, must the listener be influenced or persuaded by the solicitation.

[4] A more detailed consideration of the factors, summarized in this opinion, that lead to this conclusion may be found in *People v Shafou*, 416 Mich 113, 124-145; 330 NW2d 647 (1982) (opinion of LEVIN, J.).

[5] Where the utterances are made with intent to cause or to aid or abet the institution or maintenance of a riot, the offender is subject to ten years imprisonment and a $10,000 fine under a revision of the

## A

Section 157b is ambiguous. It appears from dictionary definitions of the words "incite," "induce," and "exhort" that "exhort," and sometimes "incite," means "to urge," while "induce," and sometimes "incite," refers to an utterance that actually moves the listener to act.[6]

Taken as a whole, the phrase "incites, induces or exhorts" might—emphasizing the word "exhorts"—be read to mean "to urge," without regard to whether the listener was persuaded or, following persuasion, acted. Such a construction would, however, deny a separate literal or dictionary meaning to "induces" and perhaps make "incites" superfluous. Alternatively, the phrase might—emphasizing the word "induces"—be read to mean "to move to action," thereby requiring some causal nexus between the words uttered and their intended effect. This construction would, however, deny a separate literal or dictionary meaning to "exhorts" and, again, perhaps make "incites" superfluous.

Thus the maxim of statutory construction that every word is to be given effect[7] is not here determinative, for the maxim cuts both ways. To require a cause and effect relationship—thereby giving meaning to "induces" and "incites"—would tend to deny literal or dictionary meaning to "exhorts." Nor will it do simply to say that "incites, induces or exhorts" is a disjunctive phrase and must therefore be read at the very least to proscribe the utterance of words urging (exhorting) the commission of one or more of the enumerated

Penal Code enacted at the same time § 157b was enacted. MCL 752.542, 752.544; MSA 28.790(2), 28.790(4). See ns 13-14 and accompanying text.

[6] See *People v Shafou, supra,* 416 Mich 126-127 (opinion of LEVIN, J.).

[7] See *People v Burns,* 5 Mich 114, 117 (1858).

offenses without regard to whether the listener was persuaded or, following persuasion, acted. Such a construction of § 157b would deny a literal or dictionary meaning to "induces" and to those separate meanings of "incites" that contemplate action on the part of the listener.

Because there is no linguistic reading of "incites, induces or exhorts" that gives a literal or dictionary meaning to all three words, the phrase "incites, induces or exhorts" is ambiguous. Confronted with ambiguous language, courts generally seek to determine the construction that appears most likely to be in accord with the legislative purpose in light of all the circumstances. Indications of legislative intent or purpose are of primary concern. Ambiguity in penal statutes, moreover, requires application of the rule of lenity.[8]

### B

Criminal responsibility as a common-law accessory before the fact—now treated as a principal[9]—required that the crime instigated "have an element of particularity."[10] Thus, general urgings to crime might subject the speaker to liability for solicitation but might fail to demonstrate a sufficient nexus to establish complicity in offenses actually committed.[11]

The 1967 civil disturbance in Detroit brought to light the fact that the Penal Code did not provide an adequate means of punishing general urgings

---

[8] *People v Gilbert,* 414 Mich 191, 211; 324 NW2d 834 (1982); *Bell v United States,* 349 US 81, 83-84; 75 S Ct 620; 99 L Ed 905 (1955).

[9] "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." MCL 767.39; MSA 28.979.

See *People v Palmer,* 392 Mich 370, 377-378; 220 NW2d 393 (1974).

[10] Williams, Criminal Law: The General Part (2d ed), § 123, p 365.

[11] See Williams, n 10 *supra,* § 195, p 612.

to commit life-endangering offenses. Section 157b was added[12] to the Penal Code in the wake of the civil disturbance so that a person who "incite[d], induce[d] or exhort[ed]" other persons to actually commit a life-endangering offense would be subject to the same maximum penalty as the person who committed the offense without regard to whether there was any further nexus or concert of action between the speaker and the listener/actor. Section 157b thus filled a gap in the scope of accomplice liability.

While, without regard to § 157b, accomplice liability might attach at common law to a speaker whose specific urgings caused the commission of an offense, the inclusion in § 157b of the word "exhorts" might indicate that such a specific causal relationship would no longer be required. After the enactment of § 157b, a general urging to a crowd or gathering that in fact resulted in the commission of one or more of the enumerated offenses would subject the speaker to criminal liability as an accomplice.

## C

The construction of § 157b as a special kind of accomplice statute derives further support from its legislative history. The same day that § 157b was enacted, the Legislature made it unlawful for a person "intending to cause or to aid or abet the institution or maintenance of a *riot,* to do an act or engage in conduct that *urges* other persons to commit acts of unlawful force or violence, or the unlawful burning or destroying of property" (emphasis supplied).[13] The maximum penalty was fixed

---

[12] 1968 PA 308.

[13] "It is unlawful and constitutes incitement to riot for a person or persons, intending to cause or to aid or abet the institution or maintenance of a riot, to do an act or engage in conduct that urges

at ten years imprisonment and a $10,000 fine.[14]

While § 157b applies to conduct that "incites, induces or exhorts," the riot provision applies to conduct that "urges." Reading § 157b as applying to conduct that merely urges commission of a dangerous offense, without requiring that the offense actually be committed or attempted,[15] ascribes to the Legislature the intent to punish solicitation—"urg[ings]," that is "exhort[ations]"— of violent or dangerous felonies with intent to incite a riot by a *lesser* penalty than solicitation to commit those same felonies *without the added danger of a riot.*

## D

After the third reading of the Senate bill that eventually became § 157b, a substitute bill was offered on the floor of the Senate; it was not seconded and thus was rejected. The dissenting opinion says that the Senate's rejection of this proposed substitute "is just as consistent—if not more consistent—with an intent to focus on *solicitation* liability as their rejection of the House proposal [see part II E] is consistent with an intent to focus on *accomplice* liability" (emphasis in original).[16]

The proposed substitute was addressed to accomplice liability: it defined certain conduct—includ-

other persons to commit acts of unlawful force or violence, or the unlawful burning or destroying of property, or the unlawful interference with a police officer, peace officer, fireman or a member of the Michigan national guard or any unit of the armed services officially assigned to riot duty in the lawful performance of his duty." 1968 PA 302, MCL 752.542; MSA 28.790(2).

[14] MCL 752.544; MSA 28.790(4).

[15] It is noteworthy that if the Legislature, when it enacted § 157b, had indeed intended to proscribe conduct that merely sought commission of certain offenses without regard to the response of the listener, it might have employed the phrase "conduct that urges," as it did in the companion riot statute. See n 13.

[16] *Post*, p 211.

ing solicitation of another person to commit an offense with intent to promote or facilitate the commission of such offense—that would subject a person to criminal responsibility for *"behavior* of another constituting a criminal offense" (emphasis supplied).[17] The proposed substitute provided that the sentencing provisions applicable to the principal actor would be equally applicable to the accomplice, but also set up an affirmative defense of withdrawal.

The rejection of the proposed substitute is not inconsistent with the view that the Senate, in approving the bill that became § 157b, was concerned with the scope of accomplice liability, particularly in the context of general urgings to crime in a civil disturbance or riot situation. The proposed substitute apparently was addressed to accomplice liability in general and, insofar as it provided that those guilty of complicity through soliciting or aiding or abetting *"behavior* of another constituting a criminal offense" would be subject to the same sentencing provisions as the principal, was consistent with the accomplice provision in the Code of Criminal Procedure.[18] The original bill that became § 157b as amended, however, also provided—consistent with the traditional punishment for conviction of complicity in a criminal offense—that an offender would be subject to a maximum penalty equal to that for the offense incited, induced, or exhorted. It therefore appears that the rejection on the Senate floor of the proposed substitute does not negate the Senate's apparent intention to deal with a specific aspect of accomplice liability. In all events, the rejection of the substitute in favor of the original bill as amended does not affirmatively indicate an inten-

[17] 1968 Senate Journal 356.
[18] MCL 767.39; MSA 28.979 (see n 9).

tion to enact legislation enlarging the penalties for common-law solicitation.

E

A proposed House substitute to the Senate bill that became § 157b clearly was addressed to solicitations. The proposed substitute proscribed any "command or solicitation" with intent to cause another to engage in criminal conduct where there is a clear and present danger that such crime would be committed.[19] Punishment was graded according to the maximum penalty prescribed for the solicited offense: solicitation of first-degree murder was punishable by twenty years imprisonment; solicitation of offenses punishable by five years to life imprisonment was punishable by five years imprisonment; solicitation of other offenses was punishable by two years imprisonment.

The Senate did not agree to the proposed House substitute. The conference committee recommended passage of the Senate version. In contrast to the House substitute, the Senate version provided for greater penalties and contained the "incites, induces or exhorts" language rather than the House's "commands or solicits."

The rejection of the House proposal in favor of the "incites, induces or exhorts" language and comparatively severe penalties of § 157b indicates that the Legislature was concerned not with mere solicitation but, rather, with the scope of accomplice liability where such offenses were actually completed or attempted.

F

If § 157b were construed to apply to urgings to commit life-endangering offenses that are not in fact committed or attempted, such conduct would

[19] 1968 Senate Journal 1513-1515.

be subject to far greater punishment in Michigan
than in almost every other jurisdiction.[20] Of those
states that have adopted solicitation statutes,
many follow the Model Penal Code, which reduces
the degree of the offense for solicitation to commit
a first-degree felony and provides for a maximum
penalty of ten years imprisonment;[21] similarly,
most other solicitation statutes authorize penalties
no greater than ten years imprisonment. Appar-
ently only two states authorize life imprisonment
on conviction of solicitation.[22] The disparity be-
tween the punishment that would be permitted by
construing § 157b as a solicitation statute and the
penalties authorized for conviction of solicitation
in most other jurisdictions further suggests that
§ 157b was aimed at conduct more egregious than
solicitation.

G

As a general proposition, conviction of a crimi-
nal attempt is punishable by a lesser maximum
penalty than conviction for a "completed" of-
fense.[23] Solicitation, in this and other states, gener-
ally has been regarded as a less serious offense

---

[20] See *People v Shafou, supra,* 416 Mich 142-145 (opinion of LEVIN,
J.). As an update to the discussion in *Shafou,* further research
indicates that Georgia (Ga Code Ann, § 16-4-7) and Kansas (Kan Stat
Ann, § 21-3303) have solicitation statutes that carry maximum penal-
ties of five and ten years imprisonment, respectively. In Maine,
solicitation to commit murder is a grade A felony, which is punish-
able by a maximum of twenty years imprisonment. Me Rev Stat Ann,
tit 17-A, §§ 153, 1252. In Oklahoma, solicitation of first-degree murder
is punishable by five years to life imprisonment. Okla Stat Ann, tit
21, § 701.16. In Idaho, solicitation is punished as an attempt to
commit the offense solicited and thus is punishable by one-half of the
maximum penalty for the "completed" offense. Idaho Code Ann, §§ 18-
306, 18-2004.

[21] Model Penal Code, §§ 5.02, 5.05, 6.06.

[22] Okla Stat Ann, tit 21, § 701.16 (solicitation of first-degree murder
punishable by five years to life imprisonment); Mont Code Ann, § 45-
4-101 (punishment may not exceed penalty for crime solicited).

[23] See MCL 750.92; MSA 28.287.

than attempt.[24] Yet, the construction of § 157b adopted by the dissenting opinion might permit a person who solicits the commission of an offense to be punished more severely than the person who acted on the solicitation. If, for example, a person urged to commit an offense is persuaded to do so but fails in his attempt to complete the offense, he might properly be convicted of and sentenced for a criminal attempt, but the speaker—on conviction for a violation of § 157b—might be sentenced as if he had committed the "completed" offense.

The dissenting opinion's construction of § 157b might further permit a person who solicits the commission of an offense, but whose solicitation is immediately rejected, to be punished as severely as one guilty of conspiracy. It has been said, however, that every solicitation is an *attempted* conspiracy,[25] and, under the general grading of punishments, would be expected to carry a lesser maximum penalty than a "completed" conspiracy.

In short, the dissenting opinion's construction of § 157b creates a drastic exception to the traditionally accepted view that merely soliciting a person to commit an offense that is not actually committed should be punished less severely than a completed or attempted offense or an agreement constituting a conspiracy.

One might argue, of course, that the Legislature actually intended to subject a person who solicits the commission of a crime that is not committed to the same penalty as may be imposed on a person who actually commits the crime, accomplices, and conspirators. The legislative history, however, tends to the opposite conclusion, and given the

---

[24] See, *e.g.*, *McDade v People*, 29 Mich 49 (1874) (solicitation to commit arson plus furnishing oil and matches held not to constitute an attempt); see also 21 Am Jur 2d, § 162, p 320.

[25] Williams, n 10 *supra*, § 212, p 669; LaFave & Scott, § 58, p 417.

ambiguity in the statute, the rule of lenity[26] requires that § 157b be construed to apply to incitements, inducements, or exhortations that in fact result in the commission of life-endangering offenses.

### H

In the cases before the Court, the conduct charged as a violation of § 157b did not in fact result in the commission or attempted commission of the urged offense. Under the construction of § 157b that we believe to be correct, neither defendant could properly be convicted of violating that section of the Penal Code.

### III

Several additional issues are presented in *Snyder*.[27] The construction of § 157b that we believe to be correct, however, makes it unnecessary for the Court to express an opinion on these additional issues.

In *Rehkopf,* we reverse the circuit court's denial of the defendant's motion to quash.

In *Snyder,* we vacate the Court of Appeals peremptory order increasing the defendant's sentence, and we reverse the defendant's conviction.

RYAN, BRICKLEY, CAVANAGH, and RILEY, JJ., concurred with LEVIN, J.

BOYLE, J. We granted leave in these two cases to decide issues left unresolved in *People v Shafou,*

---

[26] See n 8.

[27] Snyder claims that the Legislature did not intend that the offense of inciting, inducing, or exhorting another to commit murder be punishable by mandatory life imprisonment, that such a sentence would constitute cruel or unusual punishment or a denial of equal protection, and that the people could not appeal the decision of the circuit judge.

416 Mich 113; 330 NW2d 647 (1982), and *People v Formicola,* 407 Mich 293; 284 NW2d 334 (1979):

> (1) Whether the crime of inciting, inducing, or exhorting another to commit a dangerous felony includes as a necessary element the requirement that the inciting, inducing, or exhorting have occurred under circumstances such that it was likely that same would produce the result incited, induced, or exhorted;
>
> (2) Whether the Legislature intended the crime of incitement to commit first-degree murder, MCL 750.157b; MSA 28.354(2), to be punishable by mandatory life imprisonment;
>
> (3) Whether a punishment of mandatory life imprisonment for inciting to murder constitutes cruel and unusual punishment or a denial of equal protection of the laws; and
>
> (4) Whether the Court of Appeals can properly entertain a prosecutor's appeal challenging the trial judge's ruling that a statute constitutes cruel and unusual punishment.

We would hold that the crime of inciting, inducing, or exhorting the commission of an offense proscribed by MCL 750.157b; MSA 28.354(2) does not require proof of either actual incitement or of an overt act by a third party. We would further hold that life or any term of years is the prescribed penalty for incitement to commit "murder," and that such penalty is neither cruel and unusual nor a denial of equal protection. Finally, we would hold that the prosecutor may properly appeal the trial court's refusal to sentence in accordance with statutory requirements.

We therefore would affirm the denial by the trial court of the motion to quash the information in *Rehkopf,* and would reverse the judgment of the Court of Appeals remanding the case for resentencing in *Snyder.* We would remand for trial in

*Rehkopf,* and would affirm the judgment of the trial court in *Snyder.*

I

*People v Rehkopf*

Defendant Vicki Rehkopf was charged with "inciting, inducing or exhorting" an undercover policeman to murder her husband, Robert Rehkopf, in violation of MCL 750.157b; MSA 28.354(2). Defendant moved to quash the information on the ground that the participation of an undercover policeman posing as a "hit-man" eliminated any likelihood that the solicited murder would occur. Kent Circuit Court Judge Robert A. Benson denied the motion, finding that the "factual impossibility" of the contemplated murder was irrelevant to defendant's liability under the incitement provision. The Court of Appeals denied leave to appeal.

We granted leave to appeal, limited to the following question:

whether the crime of inciting, inducing, or exhorting another to commit a dangerous felony includes as a necessary element the requirement that the inciting, inducing, or exhorting have occurred under circumstances that would be likely to produce the result incited, induced, or exhorted. [417 Mich 1040 (1983).]

*People v Snyder*

Defendant John Frederick Snyder was charged with and convicted of inciting, inducing, or exhorting the first-degree murder of his brother, Arnold Snyder, whose murder never occurred because the solicited party apparently "didn't have enough guts" to follow through with it. Before sentencing, defendant moved for a declaration that MCL

750.157b; MSA 28.354(2) did not require a mandatory life sentence for incitement to commit first-degree murder, or, if it did, that such a sentence is unconstitutional as a cruel and unusual punishment and a denial of equal protection.

Finding that a mandatory life sentence under these circumstances, where the intended victim has been neither injured nor killed, would constitute cruel and unusual punishment, Judge Benson instead gave defendant a reduced sentence of fifteen to thirty years in prison. On appeal by the prosecutor, the Court of Appeals peremptorily reversed, setting aside the fifteen- to thirty-year sentence and remanding for resentencing to mandatory life imprisonment.

We granted defendant's application for leave to appeal, limited to the following three questions:

> (1) whether the Court of Appeals could properly entertain a prosecutor's appeal in this case,
>
> (2) whether the Legislature intended the crime of incitement to commit first-degree murder, MCL 750.157b; MSA 28.354(2), to be punishable by mandatory life imprisonment, and
>
> (3) whether a punishment of mandatory life imprisonment for inciting to murder constitutes cruel and unusual punishment or a denial of equal protection of the laws. [417 Mich 1039 (1983).]

## II. *Definition of the Offense*

MCL 750.157b; MSA 28.354(2) provides:

> Any person who incites, induces or exhorts any other person to unlawfully burn any property, to murder, to kill, to wound or to commit an aggravated or felonious assault on any person or to do any act which would constitute a felony or circuit court misdemeanor, that may endanger or be likely to endanger the life of any person, or who

aids and abets in any such inciting, inducing or
exhorting shall be punished in the same manner
as if he had committed the offense incited, induced
or exhorted.

We would hold that the only conduct required to
be proved on the part of a person charged under
this provision is the inciting, inducing, or exhort-
ing of a third party to commit one of the listed
offenses.

This Court previously addressed the meaning of
that requirement in *People v Shafou,* 416 Mich
113; 330 NW2d 647 (1982), a decision that pro-
duced three opinions offering three varying ap-
proaches.

Chief Justice Fitzgerald, with Justices Wil-
liams and Coleman concurring, limited the crime
to the mere inciting, inducing, or exhorting of
another to commit a referenced offense, and failed
to find any legislative intent "that conviction of a
crime under this statute would depend on the
incidental result of a third party's conduct, that is,
an overt act or proof of actual incitement." 416
Mich 122. Since it is therefore the use of words
soliciting the commission of an offense that is
proscribed, Justice Fitzgerald concluded that the
crime was complete at the point where the defen-
dant contacted the third party to induce commis-
sion of an offense.

Justice Levin, with Justice Ryan concurring,
interpreted the statute as reaching only *accom-
plice* liability, therefore requiring proof that the
solicited offense actually have occurred before a
defendant could be convicted of inciting the com-
mission of that offense under this provision. Jus-
tice Levin relied on a series of arguments in
reaching this conclusion. First, the words "induce"
and "incite," more so than "exhort," denote the

actual bringing about of the desired result, thus injecting the statutory language with ambiguity and justifying a determination of legislative intent. 416 Mich 126-128. Second, the "enormous potential disparity" between penalties provided under this provision and those provided at common law in Michigan and elsewhere for similar conduct "strongly suggests that the rule of lenity should be invoked and that § 157b should not be construed to be a solicitation statute." 416 Mich 129. Third, the provision was enacted in the wake of the 1967 Detroit riots in conjunction with another provision that specifically proscribed incitement to riot, but with a lesser penalty (maximum of ten years in prison or $10,000 fine, or both). Justice LEVIN surmised that MCL 750.157b; MSA 28.354(2) was therefore intended not to reach mere solicitation, already addressed in the riot provision, but rather "to fill in the gap perceived following the 1967 riots in the reach of accomplice liability." 416 Mich 132.

Justice LEVIN derived further support for his thesis from the legislative history of the provision, 416 Mich 133-141, the disproportionate harshness of treating the inciter more severely than the party solicited who unsuccessfully attempts to commit the offense, 416 Mich 141-142, and the disproportionate harshness of the penalty in comparison with punishment of solicitation in other states, 416 Mich 142-145.[1]

Justice KAVANAGH opted for a middle ground between Justice FITZGERALD's "mere solicitation"

---

[1] Justice LEVIN concluded with the observation that "[i]t would be preferable if the constructional issue were reviewed" in cases involving the solicitation of life-sentence offenses, where the "potential enormity of the penal provisions of § 157b, construed as a solicitation statute, would be more readily apparent." 416 Mich 145. We note that, if convicted, both defendants in the instant cases will be subject to life sentences for soliciting murder, thus squarely raising the concerns expressed by Justice LEVIN.

and Justice LEVIN's "accomplice liability" views of the statute, finding instead that "some overt act resulting in actual incitement of the other person" suffices to establish liability. 416 Mich 149. Thus, while mere solicitation, without more, would fail to constitute a violation under this approach, "[t]he overt act which must be proved to establish this crime need not be the commission of the crime sought to be incited." *Id.* Justice KAVANAGH therefore required evidence that the other person was in fact incited, though not necessarily to the extent of completion of the solicited offense.

We would adopt Justice FITZGERALD's view that the words "incite, induce or exhort" are essentially synonymous and that it is "conduct by which a person urges another to commit a specified crime with the intent that such a crime result" that is the focus of this offense. Therefore, liability need not "depend on the incidental result of a third party's conduct, that is, an overt act or proof of actual incitement." 416 Mich 122. We are unable to agree with Justice LEVIN's view that the legislative history of § 157b suggests a "successful" urging is required before liability can be imposed. First, even assuming the word "induces" was included in the provision to encompass *successful* urgings, there is no need to deny the other terms used—"incites" and "exhorts"—their natural and ordinary meaning, since it is certainly within the Legislature's prerogative to proscribe several forms of conduct in one statute. Accordingly, there is no "ambiguity" in the language used to justify a determination of legislative intent in the first place.

Second, the fact that a contemporaneous enactment proscribed "urging" to acts of violence with intent to cause a riot, punishable by a maximum of ten years imprisonment and a $10,000 fine, does

not create the inference that § 157b was addressed to *accomplice* liability. The Legislature may just as likely have intended to place a ceiling on punishment for incitement to riot because of the nonspecific nature of the intent involved—not directed at a particular victim nor urging a particular crime—while implementing a sliding-scale of punishment for the traditional solicitation offense, geared to the severity of the specific crime incited. Thus, the gravity of incitement with the intent that a specific crime be committed is measured by the gravity of the crime incited, while the gravity of incitement with the intent to create a riot is fixed by the "intent to riot" as a ten-year offense.

Third, Justice LEVIN's review of the enactment history of § 157b fails to note that, prior to adopting the bill that became the enacted version, the Senate rejected a proposed substitute bill clearly addressed to accomplice liability. 1968 Senate Journal 356. The proposed substitute provided:

> SEC. 157B. A person is legally accountable for the behavior of another constituting a criminal offense if:
>
> (A) With the intent to promote or facilitate the commission of the offense:
>
> (1) He solicits such other person to commit the offense;
>
> (2) He aids or abets such other person in planning or committing the offense; or
>
> (3) Having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make; or
>
> (B) Acting with knowledge that such other person was committing or had the purpose of committing the offense, he knowingly provided means or opportunity for the commission of the offense that substantially facilitated its commission.
>
> (C) A person found guilty under this section shall be subject to the same sentencing provisions

as apply to a person for whose criminal offense he is legally accountable.

The Senate's rejection of that proposal is just as consistent—if not more consistent—with an intent to focus on *solicitation* liability as their rejection of the House proposal is consistent with an intent to focus on *accomplice* liability (as Justice LEVIN suggests). Indeed, the language ultimately included in § 157b is closer to the description of a traditional solicitation offense than to language—such as that used in the Senate proposal above—of accomplice liability.

Finally, the fact that a solicitation construction of § 157b would result in more severe punishment of certain solicitations in Michigan than elsewhere (except Montana)[2] is not determinative of legislative intent. Where incitement to murder is involved, for example, a rational basis exists for severe punishment. The harm threatened by incitement to murder is of course of the greatest gravity: the death of another human being. As in the case of conspiracy it can also be said that solicitation is more dangerous than a direct attempt, because it may give rise to that cooperation among criminals which is a special hazard. Deliberate conduct designed to cause or culminate in a murder yields an indication that the actor is disposed toward such activity, not alone on this occasion but on others.[3] Indeed, the solicitor working through his agent may manifest an approach to crime more intelligent and masterful than the hireling.[4]

[2] Montana's statute permits imposition of a penalty not greater than that provided for the crime solicited. See *Shafou,* 416 Mich 144-145 (opinion of LEVIN, J.).

[3] Model Penal Code, Tentative Draft No 10, art 5 comments, p 25 (1960).

[4] Wechsler, Jones & Korn, *The treatment of inchoate crimes in the*

The operative language "incites, induces or exhorts" in terms permits conviction upon "mere words" spoken with the requisite intent. Thus, we would reject any requirement that the solicitation result in either actual incitement or completion of the solicited offense.

### III. *Penalty*

We would further hold that the words "murder" and "kill" in § 157b are to be interpreted according to their natural, common-law meanings and that the penalty for incitement of those crimes is therefore that provided for their statutory equivalents. Accordingly, in the case of incitement to "murder," the maximum penalty under this section is that provided for second-degree murder: life or any term of years.

The common law divided criminal homicide into two crimes, murder and manslaughter. See Perkins, Criminal Law (2d ed), p 34. Our prior decisions have consistently recognized that murder is not statutorily defined. See *People v Dykhouse*, 418 Mich 488; 345 NW2d 150 (1984); *People v Aaron*, 409 Mich 672, 715; 299 NW2d 304 (1980); *People v Scott*, 6 Mich 287, 293 (1859).

In light of the long-standing construction of the word "murder" according to its common-law meaning, we are unwilling to conclude that the Legislature intended by § 157b to punish incitement to commit first-degree murder as a separately graded offense, particularly in instances where a murder did not in fact take place. Rather, we interpret the incitement provision as prescribing the penalty for common-law murder—life or any term of years— as the penalty to be imposed for incitement to

*Model Penal Code of the American Law Institute: Attempt, solicitation, and conspiracy*, 61 Colum L R 571, 621-622, n 4 (1961).

commit "murder" irrespective of degree. In so construing the provision, we frankly acknowledge that an interpretation requiring a mandatory life sentence for the ineffectual incitement of *first-degree* murder raises a serious question under the cruel and unusual punishment clauses of the state and federal constitutions. We further note that, had the Legislature intended that result, language such as that used in the Model Penal Code could have been used to clearly incorporate the statutory grading of "murder" into the incitement provision:

> (1) Grading. Except as otherwise provided in this Section, attempt, solicitation and conspiracy are crimes *of the same grade and degree as the most serious offense which is attempted or solicited or is an object of the conspiracy.* An attempt, solicitation or conspiracy to commit a [capital crime or a] felony of the first degree is a felony of the second degree. [Model Penal Code § 5.05. Emphasis added.]

Section 157b, by contrast, refers to "murder" generically, without mentioning grading.

Section 157b as so construed is not inconsistent with the incitement to riot statute, which prescribes a penalty of up to ten years imprisonment or up to a $10,000 fine, or both. MCL 752.544(1); MSA 28.790(4)(1). As suggested in Part II, a greater penalty is imposed where the offense incited "may endanger or be likely to endanger the life of any person" than where the incitement merely encourages random violence or destruction of property. At the same time, we avoid a construction requiring a *mandatory* life sentence, resolving doubt regarding the legislative intent in favor of the rule of lenity.

While we recognize that this limiting construction of § 157b still punishes incitement to murder

more severely than does almost every other state, we are unable to conclude that the penalty provision of § 157b is on its face so grossly disproportionate to the severity of the crime as to constitute cruel or unusual punishment. *People v Lorentzen,* 387 Mich 167; 194 NW2d 827 (1972).[5]

Accordingly, we do not interfere with, nor pass judgment upon, the wisdom of the legislative choice to deal more harshly with persons convicted of this offense than the legislatures of other states have.

## IV. *Appellate Jurisdiction*

Although we would conclude that the trial judge in *Snyder* properly sentenced the defendant under the incitement statute, we do not intend to suggest that the Court of Appeals may not entertain a challenge to the imposition of an unauthorized sentence. MCL 770.12; MSA 28.1109 as interpreted in *People v Cooke,* 419 Mich 420; 355 NW2d 88 (1984), does not preclude appellate review of the trial court's sentence under these circumstances.

In *People v Cooke,* decided after the submission of the instant case, a majority of this Court held that the Legislature intended by the reenactment of MCL 770.12(1); MSA 28.1109(1) (1977 PA 34)

[5] For similar reasons, we also reject the argument that a life sentence for incitement to commit murder effects a denial of equal protection of the law. Contrary to Snyder's assertion, a defendant who incites one person to murder under MCL 750.157b; MSA 28.354(2) is not treated more severely than one who incites five people to murder under the *riot* statute, MCL 752.541 *et seq.;* MSA 28.790(1) *et seq.,* simply because the latter defendant is also subject to prosecution under the incitement provision. The utter reprehensibility of the intent to murder, in conjunction with a serious request to involve another party in performing the act, answers the claim that incitement should not be treated more harshly than the "more severe" offense of attempted murder. As suggested earlier, incitement to murder is not only every bit as potentially dangerous as attempted murder, but the incitement offense indicates an added degree of purposefulness not necessarily present in the attempt context.

after this Court's rulings in *People v Blachura,* 390 Mich 326; 212 NW2d 182 (1973), and *People v Pummer,* 399 Mich 326; 249 NW2d 78 (1976), to limit appeals by the prosecution to those situations explicitly set forth in the statute.

On April 28, 1982 the trial court found that the mandatory life penalty for first-degree murder as applied to defendant Snyder constituted cruel and unusual punishment, stating "such a sentence should shock the conscience of the Court." The prosecution does not allege that the sentence thereafter imposed shocked the conscience, nor does it urge us to address the permissible scope of prosecution appeals of an excessively lenient sentence, an issue left open in *People v Coles,* 417 Mich 523, 551; 339 NW2d 440 (1983).

The people maintain rather that an appeal may be taken from a sentence illegal on its face, or alternatively that review is permitted by authority of the writ of superintending control. While we note that appellate sentence review does not present any double jeopardy implications, since a successful appeal of the sentence would not subject the defendant to a second trial, but only to correction of the judgment, *United States v Wilson,* 420 US 332, 352-353; 95 S Ct 1013; 43 L Ed 2d 232 (1975), the instant case is not within "the express provisions of § 12," *People v Cooke, supra,* p 434. Accordingly, an appeal by the prosecution under § 12 is unavailable.

We conclude that review by the Court of Appeals was authorized instead by its jurisdiction to issue orders of superintending control under GCR 1963, 711.4. This Court has held that the superintending control order is an appropriate method for reviewing a claim that an inferior court has acted without authority, or has failed to act where it has a clear legal duty to do so. *People v Flint Munici-*

*pal Judge,* 383 Mich 429; 175 NW2d 750 (1970).[6]
Moreover, an improperly denominated pleading
may be treated as a complaint for an order of
superintending control in appropriate circum-
stances. See *Falk v State Bar of Michigan,* 411
Mich 63, 86; 305 NW2d 201 (1981); *People v Wil-
kins,* 121 Mich App 813, 817; 329 NW2d 500
(1982).

Since *People v Cooke* would not here authorize
an appeal, a refusal to permit review by superin-
tending control in a context such as the instant
case would produce the anomalous result that a
declaration by a district or circuit court as to the
validity of legislative acts would be final:

> The fact that an inferior tribunal should declare
> a criminal statute invalid does not thereby divest
> the appellate courts of jurisdiction to determine
> the correctness of that decision. The only possible
> way that these decisions can be reviewed is by an

---

[6] The federal courts have recognized a similar procedure to allow
prosecutor challenges in the absence of a right of appeal. Federal
prosecutor appeals are governed by 18 USC 3731, which provides in
relevant part:

"§ 3731. Appeal by United States

"In a criminal case an appeal by the United States shall lie to a
court of appeals from a decision, judgment, or order of a district court
dismissing an indictment or information as to any one or more courts,
except that no appeal shall lie where the double jeopardy clause of
the United States Constitution prohibits further prosecution.

"An appeal by the United States shall lie to a court of appeals from
a decision or order of a district courts *[sic]* suppressing or excluding
evidence or requiring the return of seized property in a criminal
proceeding, not made after the defendant has been put in jeopardy
and before the verdict or finding on an indictment or information, if
the United States attorney certifies to the district court that the
appeal is not taken for purpose of delay and that the evidence is a
substantial proof of a fact material in the proceeding."

While the provision has been subjected to varying interpretations, a
number of decisions have treated prosecutor sentencing challenges as
applications for a writ of mandamus to avoid the jurisdictional
problem. See *United States v Ferri,* 686 F2d 147, 152-154 (CA 3, 1982),
*cert den* 459 US 1211 (1983); 15 Wright, Miller, Cooper & Elliott,
Federal Practice and Procedure, § 3919; 16 Wright, Miller, Cooper &
Gressman, Federal Practice and Procedure, § 3936, p 263 & n 25.

appellate proceeding initiated by the prosecutor. As such, an order of superintending control, pursuant to GCR 1963, 711, is the proper vehicle to effectuate an appellate decision. [*People v Gebarowski,* 47 Mich App 379, 382; 209 NW2d 543 (1973).]

Moreover, given that an appeal is not authorized in this case, there is no other "adequate remedy" for the claimed error. GCR 1963, 711.2.

Because review of this case is clearly warranted and the Court of Appeals and this Court have jurisdiction to entertain the claim at the behest of the prosecution, we would exercise our discretionary power under GCR 865.1(7) and consider the prosecution's claim of appeal in *Snyder* as a complaint for an order of superintending control.

## V. *Conclusion*

We would respond to the questions raised by holding that (1) the crime of incitement to commit an offense listed in MCL 750.157b; MSA 28.354(2) is complete upon the inciting, exhorting, or urging of the conduct specified and proof of actual incitement or of an overt act by a third party is not necessary; (2) incitement to commit "murder," whether first or second degree, is punishable by life or any term of years; (3) the Court of Appeals properly entertained the prosecutor's challenge to the trial court's holding that MCL 750.157b; MSA 28.354(2) was unconstitutional.

In *Rehkopf,* we would affirm the trial court's denial of defendant's motion to quash. We would remand for trial.

In *Snyder,* we would vacate the decision of the Court of Appeals directing the trial court to sentence defendant to mandatory life imprisonment. We would affirm the judgment of the trial court.

WILLIAMS, C.J., concurred with BOYLE, J.