## PEOPLE v SHELSON

Docket No. 82406. Submitted January 14, 1986, at Lansing.—Decided
April 9, 1986. Leave to appeal applied for.

A jury in Arenac Circuit Court convicted Eva L. Shelson, Sr., of
inciting another to commit arson and of burning insured prop-
erty. The circuit court, Carl L. Horn, J., sentenced defendant to
five years' probation, with the first six months to be served in
the county jail, and ordered her to pay $200 in fines and $1,000
in court costs. Defendant appealed, raising several issues. *Held:*

1. The evidence at trial did not support a finding that
defendant incited her son to burn her house or that her son
actually committed the offense of arson. Defendant's remarks
to her son and to her other children regarding her desire that
the house burn down did not urge imminent action by her son
to commit the offense of arson. Therefore, the Court of Appeals
reversed this conviction.

2. The circuit court did not err in finding that defendant's
confession, which was made after she submitted to a polygraph
examination upon the suggestion of an attorney who previously
represented defendant on another matter and who was also the
county prosecutor, was voluntary. Evidence conflicted as to
whether or not the attorney actually represented defendant.
The Court of Appeals deferred to the circuit court in its
determination that the attorney did not represent defendant or
advise defendant to undergo the polygraph examination. After
reviewing the relevant factors used to determine the voluntari-
ness of a confession, including the duration and conditions of
detention, the attitude of the police towards the accused, and
the diverse pressures which sapped or sustained the accused's

REFERENCES

Am Jur 2d, Criminal Law §§ 158 *et seq.*

Am Jur 2d, Evidence §§ 529, 543 *et seq.*

Mental subnormality of accused as affecting voluntariness or admis-
sibility of confession. 8 ALR4th 16.

Criminal responsibility under 18 USCS § 2(b) of one who lacks
capacity to commit an offense but who causes another to do so. 52
ALR Fed 769.

See also the annotations in the ALR3d/4th Quick Index under
Arson; Criminal Law.

powers of resistance or self-control, the Court of Appeals concluded that defendant's confession was voluntarily given.

3. The Court of Appeals found no merit to defendant's claim that public policy was violated when one attorney both represented her and advised her to undergo the polygraph examination, and also prosecuted her. The evidence did not establish that the prosecutor represented defendant or that the prosecutor advised her to undergo the polygraph examination.

4. Defendant was not prejudiced by the unavailability of an alibi witness whom she had intended to call as a witness but who died before trial commenced. Defendant's whereabouts at the time of the fire was immaterial, since she was not charged with arson but only with inciting another to commit arson.

5. Defendant may have been prejudiced by the effect of the delay in the proceedings against her on her investigator's efforts to effectively examine the fire scene. However, the people satisfied their burden of persuasion that the delay was not deliberately intended to prejudice defendant. The circuit court properly denied defendant's pretrial motion to dismiss on the ground of delay.

Affirmed in part and reversed in part.

1. CRIMINAL LAW — INCITEMENT — SOLICITATION — ARSON.

The statute which proscribes inciting, inducing, or exhorting another person to commit certain enumerated offenses, including arson, does not subject a person to criminal responsibility for utterances that did not result in the commission of the offense sought to be committed; a person who does no more than utter words seeking the commission of the offense may be subject to criminal liability only for the common-law offense of solicitation (MCL 750.157b; MSA 28.354[2]).

2. CRIMINAL LAW — INCITEMENT.

A criminal defendant may not be convicted under the statute which proscribes inciting, inducing, or exhorting another person to commit certain enumerated offenses, unless the defendant urged imminent action (MCL 750.157b; MSA 28.354[2]).

3. CRIMINAL LAW — CONFESSIONS — VOLUNTARINESS.

The relevant factors considered by a court in determining the voluntariness of a defendant's confession include: (1) the duration and conditions of detention; (2) the manifest attitude of the police toward the accused; (3) the physical and mental state of the accused; and (4) diverse pressures which sap or sustain the accused's powers of resistance or self-control; the ultimate consideration is whether the confession is the product of an essentially free and unconstrained choice.

4. CRIMINAL LAW — APPEAL — CONFESSIONS — VOLUNTARINESS.

   The Court of Appeals, when reviewing the findings of a trial
   court made at a *Walker* hearing, must examine the entire
   record and make an independent determination of the ultimate
   issue of the voluntariness of the defendant's confession; the
   Court of Appeals will reverse such findings only when it is left
   with a firm and definite conviction that a mistake had been
   made.

5. CRIMINAL LAW — DUE PROCESS — SPEEDY TRIAL.

   The prosecutor, where there has been a delay between an alleged
   criminal transaction and the arrest of a defendant and where
   the defendant has shown some prejudice as a result of the
   delay, bears the burden of persuading the court that the reason
   for the delay is sufficient to justify whatever prejudice resulted;
   the burden of coming forward with evidence of prejudice is on
   the defendant, who is most likely to have facts regarding
   prejudice at his disposal; the burden of persuasion rests with
   the state, which is most likely to have access to facts concern-
   ing the reasons for delay and which bears the responsibility for
   determining when an investigation should end.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Jack W. Scully,* Prose-cuting Attorney, and *Michael A. Nickerson,* Assis-tant Attorney General, for the people.

State Appellate Defender (by *Chari Grove),* for defendant on appeal.

Before: GRIBBS, P.J., and D. E. HOLBROOK, JR., and T. ROUMELL,* JJ.

PER CURIAM. On September 11, 1984, defendant was convicted by a jury of inciting another to commit arson, MCL 750.157b; MSA 28.354(2), and of burning insured property, MCL 750.75; MSA 28.270. She was sentenced to five years' probation, with the first six months to be served in the county jail, and ordered to pay a $200 fine and $1,000 in court cost. She appeals from both convic-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tions. We reverse her conviction of inciting another to commit arson, and affirm her conviction of burning insured property.

On April 25, 1983, defendant's home, located on Melita Road in Arenac County, was burned. An investigation by authorities revealed that the fire originated from four separate points, leading to a conclusion that the fire was intentionally set. Defendant asserted an alibi defense and presented expert testimony that a defective electrical system caused the fire. Defendant raises twelve claims of error, only four of which merit discussion.

First, we reverse defendant's conviction for inciting her son, Patrick Shelson, to commit arson because there is insufficient evidence that her statements resulted in the commission of an offense by Patrick.

MCL 750.157b; MSA 28.354(2) provides:

"Any person who incites, induces or exhorts any other person to unlawfully burn any property, to murder, to kill, to wound or to commit an aggravated or felonious assault on any person or to do any act which would constitute a felony or circuit court misdemeanor, that may endanger or be likely to endanger the life of any person, or who aids and abets in any such inciting, inducing or exhorting shall be punished in the same manner as if he had committed the offense, incited, induced or exhorted."

An accused is not subject to criminal responsibility for exhortations or utterances which do not result in the commission of the offense sought to be committed. *People v Rehkopf,* 422 Mich 198, 205; 370 NW2d 296 (1985). A person who merely makes statements seeking the commission of an offense may be subject to liability only for the common-law offense of solicitation. *Rehkopf, supra.* This recent clarification of the statute by our

Supreme Court adopts a view which is contrary to that held by panels of this Court in *People v Salazar,* 140 Mich App 137, 143; 362 NW2d 913 (1985), and in *People v Dennis,* 128 Mich App 235; 340 NW2d 81 (1983), *rev'd* 422 Mich 966; 374 NW2d 419 (1985).

In this case, defendant was bound over to circuit court on a charge of inciting her son to commit arson based upon her son's testimony and upon evidence that the fire had been intentionally set. Patrick testified that defendant has asked him to burn the house down for her "a couple hundred thousand time at least in the past five years", making the request "at least three times a week". According to Patrick, she was unhappy about the high electric bills which ran approximately $250-$300 per month, the breakdown of the furnace, and other system failures. Patrick heard defendant make the same request to his three other brothers and two sisters. No one took defendant's statements seriously. They simply discounted her remarks, even though she had offered Patrick money to burn the house. According to Patrick, two weeks before the fire, defendant had stated that she would buy him and his sister a car if she received any money from the insurance company. Patrick testified that he absolutely refused to have anything to do with such a scheme because it was a stupid idea. At the time of the fire, Patrick was not living in the home. He had removed several household appliances at his mother's request one week before the fire.

There is no evidence that Patrick actually burned the home. It appears from the record that, after being questioned by authorities, he was not a suspect. At trial, Detective Draper testified that he believed Patrick had nothing to do with the burning. There is no evidence that defendant's constant

wish that the house would burn, a wish she communicated to all of her children, resulted in the commission of arson. Thus, under *Rehkopf, supra,* we reverse her conviction.

Further, defendant's remarks to her children did not urge the type of immediate or imminent action which is required to support a conviction. See, *People v Chapman,* 80 Mich App 583, 588; 264 NW2d 69 (1978).

Defendant next contends that the trial court erred when it concluded, after a *Walker*[1] hearing, that her post-polygraph confession was voluntary. Approximately a month or more before submitting to the polygraph test, defendant discussed the advisability of taking the test with Jack W. Scully, an attorney who had represented her in a divorce action. Defendant had stopped by Scully's office to make a payment on her outstanding account, and brought the matter up. Scully was a prosecuting attorney, in addition to his private practice, a fact of which defendant was aware. At the *Walker* hearing, Scully testified that he had told defendant, "Mrs. Shelson, if you didn't do this you probably have nothing to lose by taking it [the polygraph test]". Scully testified that he did not represent her at the time this conversation occurred. In contrast, defendant testified that Scully "just indicated that if I didn't do it to take the test".

A trial court's ruling on the voluntariness of a confession or statement is reviewed by the standard described in *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709 (1972):

"The determination of voluntariness is a matter of fact—the ruling of law on the authority of the cases

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

cited is that voluntary statements etc. are admissible and involuntary statements etc. are not.

"In any event the sole purpose of the *Walker* hearing is to determine the fact of voluntariness and a reviewing court is concerned only with the correctness of that determination. The role of reviewing court is accurately stated in *People v Summers,* 15 Mich App 346, 348 (1968):

" 'On this appeal we are required to "examine the entire record and make an independent determination of the ultimate issue of voluntariness." *Davis v North Carolina* (1966), 384 US 737, 741, 742 (86 S Ct 1761, 1764, 16 L Ed 2d 895, 898).' "

We must affirm the trial court's findings unless we are left with a firm and definite conviction that a mistake has been made. *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974).

Defendant argues that her statements were involuntary, because they were induced by the misleading and ineffective advice of her attorney Scully. There was conflicting evidence at the *Walker* hearing as to whether Scully was acting as defendant's attorney and whether he actually advised her to take the test. Where the evidence is conflicting, and the determination of voluntariness largely depends upon credibility, we defer to the findings of the lower court since it is in a better position to evaluate credibility. *People v Smith,* 124 Mich App 723, 725; 335 NW2d 137 (1983). The trial court gave greater weight to Scully's testimony and concluded that he did not advise defendant to take the polygraph test. We are not left with a firm and definite conviction that a mistake has been made.

Defendant next argues that her statements were involuntary because they were induced by a promise of leniency, *i.e.,* probation, offered by Officer Draper. It is improper to induce a confession by a

promise of leniency. *People v Conte,* 421 Mich 704; 365 NW2d 648 (1984). At trial, defendant testified that Officer Draper had promised her probation if she would confess, but that point was not pursued by her attorney or rebutted by the prosecution, and *no* such evidence was presented at the *Walker* hearing. Thus we find no error in the trial court's finding of voluntariness.

Defendant also contends that her statements were involuntary because they were induced by Detective Lowthian's statement that she could not give money and keys to her son Patrick, who was meeting with other detectives. At the *Walker* hearing, defendant testified that the statement caused her to worry about Patrick. Defendant apparently inferred from the statement that Patrick was detained for the purpose of arrest. After reviewing the relevant factors used to determine voluntariness, such as the duration and conditions of detention, the attitude of the police towards the accused, the physical and mental state of the accused, and the diverse pressures which sapped or sustained the accused's powers of resistance or self-control, we conclude that defendant's statements were voluntary. See *People v Allen,* 8 Mich App 408, 412; 154 NW2d 570 (1967). She was not questioned for an inordinately long period of time and she felt that the officers treated her courteously. At the *Walker* hearing, she testified that her *Miranda*[2] rights were read to her, that she had waived them, and had voluntarily given a statement. We find no error.

In her third claim of error, defendant argues that it was against public policy, as embodied in MCL 776.14; MSA 28.1271, for Scully to advise her to take the polygraph test and then to prosecute

---

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

her. We are not persuaded by the claim. As noted earlier, the trial court properly concluded that Scully did not act as her attorney and did not advise her to take the test. Defendant delayed more than a month before taking the test and had an opportunity to consult other counsel but did not do so.

As a fourth claim of error, defendant argues that the eight-month delay between the fire and her arrest deprived her of an opportunity to establish an adequate defense because her alibi witness, a boyfriend named Orville, died in that intervening period. She further argues that an investigation of the fire scene for defense purposes was impaired by the delay.

In *People v Bisard,* 114 Mich App 784, 791; 319 NW2d 670 (1982), this Court reevaluated the prevailing test of prejudicial delay described by *People v Hernandez,* 15 Mich App 141; 170 NW2d 851 (1968), in light of subsequent federal decisions, and adopted a balancing test:

"Accordingly, we hold that, once a defendant has shown some prejudice, the prosecution bears the burden of persuading the court that the reason for the delay is sufficient to justify whatever prejudice resulted. This approach places the burden of coming forward with evidence of prejudice on the defendant, who is most likely to have facts regarding prejudice at his disposal. The burden of persuasion rests with the state, which is most likely to have access to facts concerning the reasons for delay and which bears the responsibility for determining when an investigation should end."

See, also, *People v Vargo,* 139 Mich App 573, 579; 362 NW2d 840 (1984).

Defendant made a pretrial motion to dismiss, raising these grounds. After a hearing, the trial court denied the motion, finding an absence of

negligence or intentional delay on the part of the police.

We find no prejudice resulting from the unavailability of her alibi witness Orville, since her whereabouts at the time of the fire was not material. The people's theory of the case was not that defendant had burned her home, but that she had incited another to burn it for her. Moreover, several witnesses, including her son, daughter and brother, were able to testify about the sentimental attachment defendant had to the personal and household items destroyed by the fire. Orville's testimony would only have been cumulative on this point.

Defendant may have shown prejudice by the effect the delay had on her efforts to investigate the fire scene. Defendant's investigator inspected the site on March 10, 1984, almost one year after the fire, but only four months after defendant had been charged in December of 1984. At trial, the fire investigator for defendant's insurance company testified that he did not take any samples from the site because tests performed on those samples would not be accurate in light of their exposure to the elements. Assuming *arguendo* that defendant has shown prejudice, the people have satisfied the burden of persuasion that the delay was not deliberately intended to prejudice her. We affirm the trial court's denial of the motion to dismiss.

We have reviewed the remaining allegations of error and find them to be without merit.

Affirmed in part and reversed in part.