PEOPLE v ROGERS

1. APPEAL AND ERROR—JUDGES—TRIAL—JUDICIAL COMMENT—IMPAR-
   TIALITY—UNDUE INFLUENCE—FAIR TRIAL.

   The test to be applied to determine whether a trial judge has
   pierced the veil of judicial impartiality by making comments on
   the credibility of a witness at trial which are reversibly erro-
   neous is whether his comments were of such a nature as to
   unduly influence the jury and thereby deprive a party of his
   right to a fair and impartial trial.

2. TRIAL—JUDGES—STATUTES—DUTY TO CONTROL—LIMITATION OF AR-
   GUMENT—RELEVANCY—EVIDENCE—COMMENT—INTEREST OF JUS-
   TICE.

   A trial judge, by statute, has a duty to control trial proceedings
   by limiting the introduction of evidence and the arguments of
   counsel to relevant and material matters, and he is allowed to
   comment upon the evidence in the course of jury instruction as
   in his opinion the interest of justice may require (MCLA
   768.29).

3. TRIAL—JUDGES—DISCRETION—QUESTIONING—LATITUDE—UNREA-
   SONABLE REPETITION—RELEVANCY.

   A trial court's discretion must be exercised to control the orderly
   conduct of the business of the court; the trial judge should
   permit reasonable latitude to counsel in the examination and
   cross-examination of eyewitnesses, but should not permit un-
   reasonable repetition or permit counsel to pursue clearly irrele-
   vant lines of inquiry.

4. TRIAL—JUDGES—COMMENTS—INTERJECTING PERSONALITY—DEME-
   ANING COUNSEL—RELEVANCY.

   The comments of a trial judge concerning the consistency of a

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial §§ 113–115.
[2] 75 Am Jur 2d, Trial §§ 95, 96, 109.
[3] 75 Am Jur 2d, Trial § 85.
[4] 75 Am Jur 2d, Trial §§ 116–119.
[5] 40 Am Jur 2d, Homicide §§ 493–497, 1094.
[6] 40 Am Jur 2d, Homicide §§ 139–169.
[7] 75 Am Jur 2d, Trial §§ 754–757.

witness's testimony were not improper where the judge did not interject his personality and views into the proceedings, and counsel was neither berated, scolded nor demeaned by the comments, and they concerned a matter relevant to the orderly conduct of the business of the court.

5. EVIDENCE—CRIMINAL LAW—HEARSAY—EXCITED UTTERANCE EXCEPTIONS—WITNESSES—BYSTANDERS.

The testimony of a witness present at the scene of a stabbing that unidentified declarants at that scene had stated that the defendant had committed the act, which otherwise meets the foundation requirements of the excited utterance exception to the hearsay rule, is admissible under the exception, even where the witness did not see the stabbing committed.

6. EVIDENCE—CRIMINAL LAW—HEARSAY—HOMICIDE—SELF-DEFENSE—HARMLESS ERROR—OTHER EVIDENCE.

Admission at a murder trial of hearsay testimony that the defendant had stabbed the decedent was harmless error, if any, where the defendant admitted the act but claimed self-defense, and other testimony establishing the same facts was admitted without objection.

7. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEFENSES—SELF-DEFENSE—BURDEN OF PROOF.

There is authority to support a trial court's instruction to the jury that the defense of self-defense should be carefully scrutinized so as to protect both defendant's and society's interests and reversible error does not occur where the instruction, examined as a whole, does not place the burden of proof upon the defendant.

Appeal from Recorder's Court of Detroit, James Del Rio, J. Submitted Division 1 March 5, 1975, at Detroit. (Docket No. 19971.) Decided April 25, 1975.

Linda Rogers was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal

Attorney, Research, Training & Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*David Harris,* for defendant.

Before: ALLEN, P. J., and McGREGOR and M. F. CAVANAGH, JJ.

ALLEN, P. J. On February 16, 1974, a jury found defendant guilty of manslaughter. MCLA 750.321; MSA 28.553. On February 25, 1974, she received a sentence of 7-1/2 to 15 years in the Detroit House of Corrections, and has appealed.

Defendant argues on appeal that the trial court committed reversible error when it commented to defense counsel that a certain witness's answers were not inconsistent with answers he had previously given at the preliminary examination. Defendant argues that error was also committed when the trial court allowed the admission of a statement into evidence purportedly falling within the excited utterance exception to the hearsay rule without establishing a foundation that the declarant had witnessed the event. Finally, defendant argues that reversible error was committed when the trial court instructed the jury to "scrutinize" defendant's defense of self-defense.

On the night of January 18, 1974, defendant, her husband and a number of other friends attended a party at the home of Dorothy White, 9366 Lessing, in the city of Detroit. The party continued until the early morning hours of January 19, at which time defendant became engaged in an argument with Gloria Armstrong, the deceased. At about 6:30 a.m., on January 19, an argument ensued, one thing led to another, and defendant stabbed Gloria Armstrong in the chest.

Defendant was charged with second-degree murder, MCLA 750.317; MSA 28.549. Her defense was self-defense, and, as we have seen, the jury convicted her of manslaughter.

Defendant's initial claim of error arises out of two occurrences during defense counsel's cross-examination of Neal Graham, a witness to the episode recited above. Defense counsel questioned Graham as to whether he had seen defendant holding a knife, and whether Armstrong had been armed. Graham testified that the first time he saw defendant with a knife was when it was "coming down" toward the deceased. He then said that he did not know if the deceased had a knife or any other weapon, and then also said that deceased did not have a weapon. Defense counsel referred to a portion of the examination transcript at which time the witness said that he did not know if the deceased had a knife. The prosecutor objected on the grounds that this question had been asked and answered and that the witness's answer was not inconsistent. In the presence of the jury, the court, defense counsel and the prosecutor discussed whether or not the answers were inconsistent or whether the witness, based upon his level of education and ability to articulate a clear answer in response to defense counsel's questions, was merely confused. In the course of his discussion, the trial court said that the witness's "answers haven't been inconsistent with what he said before * * * ". The court then said "I don't think he gave different answers", and allowed defense counsel to proceed with his examination.

Subsequently, defense counsel questioned Graham as to Graham's recitation of the events preceding the assault, and in particular Graham's activities in talking to a particular woman in the

doorway. Defense counsel was trying to pin Graham down as to with whom he was speaking. Once again, counsel referred to the preliminary examination testimony in which Graham stated that he had been "chatting" with a lady in the doorway. This is exactly what he had testified to at trial. Defense counsel then presented the witness with the next question at the examination and the witness' answer thereto. The witness read this question to himself, and our examination of the preliminary examination transcript has revealed that the question related to whether or not Graham saw defendant and the deceased in the kitchen. The witness replied "yes". The prosecutor then objected and the court requested both counsel to approach the bench. However, previous to engaging in an off-the-record discussion at the bench, defense counsel told the court that the witness was "giving me a hard time". The trial court replied that the witness was not being difficult, referred to the educational differences between the witness and a person such as a lawyer, and stated that while the lawyer may not be getting the answers that he desired, "the answers that you have gotten have not been inconsistent". Counsel then continued his examination as to with whom the witness spoke in the kitchen or in the doorway, and it was established that he had spoken to the deceased previous to the above described altercation.

Referring to the above, defense counsel has argued that the trial court expressed his opinion that Graham's testimony was consistent with the preliminary examination transcript and that the trial court improperly invaded the province of the jury to judge the credibility of the witness. It is clear from our examination of the record that

defense counsel failed to voice this specific objection in response to the trial court's comments, and generally our Court will not consider such a claim when trial counsel has failed to object to the trial court's comments at trial. *People v Williams,* 29 Mich App 420, 425; 185 NW2d 435 (1971).

In any event, we find that reversible error was not committed. The test to be applied in such a situation is whether or not the trial judge's comments "were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial". *People v Wilson,* 21 Mich App 36, 37; 174 NW2d 914 (1969), US Const, Am VI, and Const 1963, art 1, § 20. If the Court's examination of the record discloses that the trial court "pierced the veil of judicial impartiality", defendant's conviction must be reversed. *People v London,* 40 Mich App 124, 129–130; 198 NW2d 723 (1972), and cases cited therein. See also *People v Watson,* 52 Mich App 211, 214–215; 217 NW2d 121 (1974).

According to MCLA 768.29; MSA 28.1052, the trial court has the duty to control the trial proceedings, which includes the duty to:

"limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved."

Also, that statute allows the trial judge, in the course of the jury instructions, to comment upon the evidence "as in his opinion the interest of justice may require". The instant case involves not an instruction but rather a comment during the course of defense counsel's cross-examination. As noted in ABA Project on Minimum Standards for Criminal Justice, Standards Relating To The Ad-

ministration of Criminal Justice, *The Function of The Trial Judge,* § 5.5, p 176:

"The trial judge should permit reasonable latitude to counsel in the examination and cross-examination of witnesses, but should not permit unreasonable repetition or permit counsel to pursue clearly irrelevant lines of inquiry."

In Michigan, reversible error was not found where, although the trial court "may have lost patience at the continued repetition of questions and objections, and have gone to some length in compelling counsel to desist", it was held that this was a matter within the trial court's discretion which must be exercised to "control * * * the orderly conduct of the business of the court". *People v Whitney,* 105 Mich 622, 634; 63 NW 765 (1895).

We find that the trial court's comments fall within the above rule. Unlike the situation in *Wilson, supra,* the trial court did not interject its "personality and views into the proceedings". Defense counsel was neither "berate[d], scold[ed]" nor demeaned by the trial court. *People v Wilson,* 21 Mich App 36, 38; 174 NW2d 914 (1969). Unlike the situation in *People v Harris,* 37 Mich App 409, 410; 195 NW2d 29 (1971), the trial court did not say that the prosecution had proven the elements of the crime. Further, the instant case does not approach the situation in *People v London, supra,* wherein pressures imposed by an irritated and impatient trial judge seemingly led to a hasty verdict and denied defendant his right to a fair trial. 40 Mich App at 125–126; 198 NW2d at 724–725. In the present case, the trial court exercised its discretion to reach an "expeditious and effective ascertainment of the truth", and did not pierce the veil of judicial impartiality. The wit-

ness' trial testimony was not inconsistent with his preliminary examination testimony. At the examination, he testified that he did not see the weapon in defendant's hand until she was stabbing the deceased. That is precisely what he testified to at trial. As far as whether the deceased was armed, Graham said that her back was turned to him and that he could not see if she had a weapon. His testimony that he "did not know" if she had a weapon was not inconsistent with his statement that he "did not see one". The witness' testimony was the same at trial, and we find that the answers were not inconsistent. Further, defense counsel's questions regarding with whom defendant was chatting at the doorway did not elicit an inconsistent response from defendant, and we find that the trial court properly exercised its discretion to control proceedings. In light of trial counsel's failure to voice his specific objection to this point, and the discretion afforded the trial court to control the proceedings, we find no reversible error.

In the course of examining one of his witnesses, the assistant prosecutor asked her whether anyone in the house had said who had stabbed Gloria Armstrong. Defense counsel immediately objected on the grounds that the question called for hearsay testimony; the prosecutor argued that this evidence came within the excited utterance exception to the hearsay rule, and trial court overruled defense counsel's objection. The prosecutor once again asked whether the witness had heard anyone say anything regarding the stabbing; defense counsel renewed his objection; the prosecutor stated that he was inquiring whether the witness heard anything when she was in the bathroom attending to Gloria Armstrong, and the trial court

allowed the prosecutor to ask the question. In response to this question, the witness replied:

"It was remarks like she stabbed that girl. Linda stabbed her, why did she do it, Linda stabbed her, you know, things like that."

Defendant argues that this evidence was inadmissible on the grounds that a proper foundation had not been established; namely, that the declarant was unidentified and that the prosecution failed to establish that the declarant had either participated in the occurrence or witnessed it. Further, defendant argues that the witness herself, not being a witness to the stabbing, should have been precluded from reciting the above testimony. The people reply that this evidence comes within the excited utterance, or res gestae, exception to the hearsay rule, and that even if it is found to be erroneously admitted, it was harmless error in light of the other evidence admitted at trial.

*In re Blackwell Estate,* 50 Mich App 204, 220–223; 213 NW2d 201 (1973), seemingly would support defendant's argument that a witness' recitation of what an unidentified bystander had said would not come within the res gestae, spontaneous exclamation or excited utterance exception to the hearsay rule. In that case, a police officer who arrived on the scene of an apparent hit and run was told by an unidentified bystander that a car had just struck the decedent. A special record was made, and it was established that the officer did not obtain the identification of this declarant nor was the officer certain that the declarant had seen the accident. 50 Mich App at 220–221; 213 NW2d at 209–210. *Blackwell* held that the trial court properly excluded this evidence on the ground that this evidence failed to meet the foundation for

admission of such testimony. 50 Mich App at 222–223; 213 NW2d at 210–211.

However, the Michigan Supreme Court peremptorily reversed the above decision stating "the trial court erred in not allowing the police officer to testify within the policy of the excited utterance exception to the hearsay rule". *In re Blackwell Estate,* 391 Mich 798; 216 NW2d 419 (1974). If Pauline Midgett's testimony as to what the unidentified declarant had said otherwise meets the foundation requirements for the admission of an excited utterance,[1] which are incidentally not challenged on appeal, it would seem that Midgett could testify that somebody said that defendant had stabbed Gloria Armstrong. However, the fact that defendant had stabbed Armstrong was not the issue, but rather, defendant claimed self-defense. She admitted that she stabbed Armstrong but claimed she did so after Armstrong had pulled a black-handled razor out of her coat pocket. Further, William Robinson, defendant's father, testified that someone had told him that his daughter had stabbed Armstrong. Thus, the same evidence to which defense counsel previously objected was admitted without objection. The error, if any, was harmless. See *People v Swann,* 44 Mich App 329, 334–335; 205 NW2d 281 (1973), and *People v Harrison,* 49 Mich App 546, 551; 212 NW2d 278 (1973).

Defendant's final argument is that the trial court erred when instructing the jury that the defense of self-defense should be "carefully scrutinized". When examining a claim of error regarding the jury instruction, an appellate court must read the instructions in their entirety. *People v Broom,* 50 Mich App 337, 339; 213 NW2d 247

---

[1] *See generally, Rice v Jackson,* 1 Mich App 105, 111; 134 NW2d 366; 13 ALR3d 1104 (1965).

(1973). Having examined the instruction at issue and the balance of the jury instructions as to the burden of proof, we find no error.

The instruction at issue was almost verbatim from 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 906, Form 405, pp 1283–1284. Cited in support of that instruction is *People v Coughlin,* 65 Mich 704; 32 NW 905 (1887). An examination of that decision has disclosed that *Coughlin* reversed a murder conviction on the grounds that the trial court instructed the jury that defendant had the burden of proof of his defense of self-defense. While error was found on this ground, *Coughlin* contained no discussion at all on the point that the claim of self-defense was to be carefully scrutinized.

However, despite Gillespie's erroneous citation, there is authority to support the trial court's instruction. *People v Statkiewicz,* 247 Mich 260, 266; 225 NW 540 (1929), affirmed a first-degree murder conviction and approved, *inter alia,* an instruction that the jury should carefully scrutinize the claim of self-defense for two reasons. First, defendant should not be punished if he acted in self-defense, nor should the interests of society and the ends of justice be defeated if it is determined that the claim was "unfounded". *Statkiewicz* stated that the instruction "did not belittle the theory of counsel, nor imply that the plea was not made in good faith". 247 Mich at 266; 225 NW at 542.

An instruction very similar to the one at hand was present in *People v Fredericks,* 36 Mich App 632, 636; 194 NW2d 42 (1971), *remanded on other grounds,* 387 Mich 755; 194 NW2d 834 (1972), *aff'd,* 40 Mich App 425; 198 NW2d 895 (1972). The court therein quoted that portion of the instruction simi-

lar to the one at hand as well as the balance of the instruction of self-defense. After examining the instruction as a whole, the court held, *inter alia,* that the instruction did not place the burden of proof upon defendant. 36 Mich App at 638; 194 NW2d at 45. Likewise, after examining the instruction as a whole, we find that trial court did not commit reversible error. The trial court instructed the jury to closely scrutinize the claim of self-defense so as to protect both defendant's and society's interests. The trial court at least three times told the jury that the people had the burden of proof, and specifically told the jury that the people had the burden to prove beyond a reasonable doubt that defendant did not act in self-defense. We find no reversible error.

Affirmed.