PEOPLE v LANE

Docket No. 64584. Submitted June 8, 1983, at Detroit.—Decided
August 1, 1983.

Cheryl Lane was convicted of assault with intent to do great
bodily harm less than murder, Detroit Recorder's Court, Mi-
chael J. Talbot, J. She appealed alleging that: (1) prejudicial
error occurred in the prosecuting attorney's cross-examination
of her and in the prosecutor's closing argument, (2) her convic-
tion should be vacated and the charge dismissed with prejudice
because the police negligently destroyed certain evidence, an
empty bottle that had contained hydrochloric acid, and (3) the
trial judge erred in questioning her in the presence of the jury.
*Held:*

1. The defendant's constitutional rights were not violated by
her being cross-examined by the prosecuting attorney or in the
prosecutor's closing argument. The defendant testified on her
own behalf. If a defendant chooses to testify in his own defense
he may be cross-examined to test his credibility. A prosecuting
attorney may properly ask the defendant to explain prior
inconsistent statements and facts, and the use of pre-arrest
silence to impeach the credibility of that defendant is not a
federal constitutional violation. Here, there was no issue of
silence nor was there any question of the defendant's having
made or having refused to make a statement to the police.

2. The defendant's conviction should not be vacated on the
basis of the destruction of the empty bottle that had contained
hydrochloric acid. There was no evidence of the police's inten-
tional misconduct or bad faith. The defendant did not make a
motion for discovery regarding the evidence prior to the de-
struction of the bottle. The introduction of the bottle into
evidence was not necessary to prove beyond a reasonable doubt

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 624.
    75 Am Jur 2d, Trial § 315.
[2] 29 Am Jur 2d, Evidence §§ 638-640.
[3] 5 Am Jur 2d, Appeal and Error § 738.
    29 Am Jur 2d, Evidence §§ 276, 292.
[4] 75 Am Jur 2d, Trial § 88.

the elements of assault with intent to commit great bodily harm less than murder. The defendant admitted that she tossed a substance used to remedy a drain problem at the complainant.

3. The trial judge did not err in questioning the defendant in the presence of the jury. A trial judge possesses the latitude to question a witness for the purpose of shedding light on something unclear in the witness's testimony. The questioning by the trial judge here was limited in scope, material to an issue in the case, and did not convey any opinion which the court had regarding the issue.

Affirmed.

1. CRIMINAL LAW — APPEAL — PROSECUTORIAL COMMENT.

Failure to object to the admission of evidence or a prosecutor's remarks in closing argument at the trial precludes appellate review of those issues absent manifest injustice.

2. CRIMINAL LAW — RIGHT TO REMAIN SILENT — EVIDENCE.

An accused's silence, even in the face of specific accusation of a crime, may not be used as evidence of his guilt or to impeach him.

3. CRIMINAL LAW — APPEAL — EVIDENCE — LOST EVIDENCE.

A loss of evidence which occurs before a defense request for the evidence does not mandate reversal of a conviction where there is no showing of bad faith or intentional suppression of the evidence.

4. TRIAL — EXAMINATION BY JUDGES.

A trial judge possesses the latitude to question a witness for the purpose of shedding light on something that is unclear in the witness's testimony.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Frank J. Bernacki,* Assistant Prosecuting Attorney, for the people.

*Hoffa, Chodak & Robiner* (by *Norman R. Robiner),* for defendant on appeal.

Before: D. F. WALSH, P.J., and BEASLEY and D. L. SULLIVAN,* JJ.

BEASLEY, J. Defendant, Cheryl Lane, was convicted by a jury of assault with intent to do great bodily harm less than murder, in violation of MCL 750.84; MSA 28.279. After being sentenced to not less than two and one-half nor more than ten years in prison, defendant appeals as of right, raising three issues.

On appeal, defendant claims that prejudicial error was injected into the trial by way of the prosecutor's closing argument and cross-examination of defendant. We quote from the following pertinent passages of the trial transcript:

"*Q. [By Mr. Lehto, Assistant Prosecutor]:* You had what you call a knife fight with Cynthia. Did you report it to the police?

"*A. [defendant]:* No I didn't.

"*Q.* Is that because you were going to take care of it yourself?

"*A.* No. That wasn't why. I was going to report it, but they told me that I couldn't do nothing about it because she had done already filed a complaint.

"*Q.* You reported it to the police that night?

"*A.* No.

\* \* \*

"*[By Mr. Lehto in closing argument]:* Another objective unchangeable fact—it's a minor point—but the defendant in this case was arrested on November 2. You will recall when I asked her when she was hurt so bad by this knife fight, did she report it to the police. And she said something about no because the other person was complaining against her and that she couldn't report it. Ladies and gentlemen, that doesn't make any sense, because she did not even see the police in regard to this case until November 2. Rather, it is

---

* Circuit judge, sitting on the Court of Appeals by assignment.

our position that she took things into her own hands that night, and that night was October 16, 1981."

Part of the defense in this case was a claim of self-defense. Defendant claimed that, approximately an hour before she threw acid on complainant, she was attacked by the complainant with a knife. All witnesses agreed that there was an altercation between defendant and complainant about an hour previous to the main event. The testimony was in conflict as to whether complainant possessed and wielded a knife and as to who was the aggressor.

All witnesses to the altercation testified and were subjected to cross-examination. The last such witness was defendant. In the trial court, no objection was made by defendant to the portion of the prosecutor's cross-examination that is set forth in this opinion. Nor was objection made by defendant in the trial court to the prosecutor's references in closing argument to defendant's alleged failure to report to the police the earlier knife attack that defendant claimed complainant made upon her. On appeal, defendant argues that reference to her alleged failure to report to the police the earlier knife attack is a violation of her constitutional right to remain silent.

Absent a showing of manifest injustice, specific objections to the admission of evidence or a prosecutor's remarks in closing argument cannot be raised for the first time on appeal.[1] While we are not inclined to believe that manifest injustice is present in this trial, we nevertheless review defendant's claim on appeal.

[1] *People v Counts,* 318 Mich 45, 51-52; 27 NW2d 338 (1947); *People v Tenbrink,* 93 Mich App 326, 332; 287 NW2d 223 (1979).

In *People v Bobo*,[2] the Michigan Supreme Court held that the silence of a defendant may not be used as evidence of his guilt or to impeach him. In *Bobo,* defendant testified in his trial on entering without breaking to commit larceny that shortly before his arrest at the scene of the crime he saw two men run past him. Defendant was then cross-examined by the prosecutor as to why he did not tell the police officers at the scene that two men had run past him. Reasoning that at the time of his arrest at the scene of the offense defendant had an absolute right to remain silent, the *Bobo* Court ruled that it was prejudicial error to use evidence of the defendant's silence against him.

In *Jenkins v Anderson*,[3] the United States Supreme Court affirmed a decision of this Court which upheld a first-degree murder conviction[4] where defendant claimed self-defense in a stabbing death. In *Jenkins,* the defendant testified on direct examination that the victim attacked him with a knife and that he killed the victim in self-defense. On cross-examination, the prosecutor asked the defendant whether he ever told the police what happened, and defendant admitted that he did not do so until two weeks after the incident. The Supreme Court held that if a defendant chooses to testify in his own defense, he opens himself to cross-examination to test his credibility and he may be asked to explain prior inconsistent statements and facts.

The Supreme Court noted that a valid purpose of cross-examination is to elicit the truth. Thus, the Supreme Court concluded that when a defen-

---

[2] 390 Mich 355; 212 NW2d 190 (1973).

[3] 447 US 231; 100 S Ct 2124; 65 L Ed 2d 86 (1980).

[4] Unpublished memorandum opinion, *People v Jenkins,* docket no. 77-2511, released on September 9, 1978, *lv den* 406 Mich 875 (1979).

dant chooses to waive his constitutional right to remain silent and decides to testify in his own defense, the use of pre-arrest silence to impeach the credibility of the defendant is *not* a federal constitutional violation.

In the within matter, defendant presented her witnesses and testified on her own behalf. There was no issue of "silence", nor was there any question of defendant having made or having refused to make a statement to the police.

It seems clear that the court in *Jenkins* would find neither the quoted questions and answers nor the closing argument to constitute error.[5]

In *People v Cole,*[6] the Michigan Supreme Court, in a unanimous decision, signaled an intention that not every use by the prosecution of evidence of a defendant's silence will be deemed a *Bobo* violation. In fact, the Michigan Supreme Court cited a federal case, *Anderson v Charles,*[7] which was decided about the same time as *Jenkins v Anderson, supra,* holding that cross-examination of a defendant with regard to prior inconsistent statements was permissible.

We are inclined to conclude that the Michigan

[5] Justice Stephens' analysis is particularly cogent. He believed that in deciding whether the Fifth Amendment (federal) privilege to remain silent is applicable depends upon whether the testimony of the defendant could be compelled—and whether the defendant then asserted his privilege. He believed the admissibility of defendant's failure to come forward shortly after the stabbing with the excuse of self-defense was *not* a constitutional issue, but a routine evidentiary question turning on the probative significance of that evidence. See 447 US 231, 244. I believe that if the defendant had objected to the prosecutor's cross-examination of her that is now objected to on appeal, the correct ruling would have been to sustain the objection, *not* on constitutional grounds, but on the basis that the defendant had no legal duty to report or complain to the police, and the answer to the question would be irrelevant and of no probative significance. But, as indicated, no objection was made.

[6] 411 Mich 483; 307 NW2d 687 (1981).

[7] 447 US 404; 100 S Ct 2180; 65 L Ed 2d 222 (1980).

Supreme Court intended to follow the balanced rationale of the cited federal cases. We conclude that no constitutional violation occurred here.

While, if objections had been raised, it would have been a close question whether they correctly should have been sustained, the cross-examination and closing argument were not so patently offensive to the judicial system as to require reversal of defendant's conviction.

Secondly, defendant maintains that the negligent destruction by the police of the bottle containing the alleged acid prevented her from having a fair trial and, thus, the conviction should be vacated and the charge dismissed with prejudice. While conceding that she did not seek discovery concerning the bottle, defendant contends that it was necessary for the jury to examine the bottle in order to determine whether it was possible for her to throw liquid from it into complainant's face.

A police sergeant testified that he received an empty hydrochloric acid bottle allegedly used in the assault, completed a proper report, and placed it in evidence in the precinct property room. Subsequently, he discovered that the bottle had been broken and discarded. The record is bereft of evidence that the prosecutor or police deliberately suppressed the item or displayed bad faith in not introducing it at trial.

In a case apposite to the within matter, *People v Amison*,[8] the defendant was convicted of delivery of heroin. At the trial, it was established that the police had lost the tape recording made of the alleged heroin sale. Notwithstanding the absence of the tape, several officers testified, over objection, in regard to the contents of the conversation they heard while monitoring the conversation. On ap-

[8] 70 Mich App 70; 245 NW2d 405 (1976), *lv den* 402 Mich 815 (1977).

peal, defendant maintained that the negligent loss of the tape denied him his rights to due process and a fair trial since he was deprived of an opportunity to fully cross-examine witnesses against him. After a review of the applicable federal and state law, the Court in *Amison* held:

"Evidence is material if the evidence 'could * * * in any reasonable likelihood have affected the judgment of the jury'. Favorable evidence is defined as all 'evidence which * * * might have led the jury to entertain a reasonable doubt about * * * guilt'. These tests should be liberally construed especially when 'substantial room for doubt' exists as to the effect disclosure might have.

"In the instant case, defendant made a request for the tape. It is clear that the missing tape would have been material to the case inasmuch as it might have affected the credibility of key prosecution witnesses. Whether the tape could have been exculpatory is difficult to determine. In determining whether suppression of evidence requires the vitiation of a defendant's conviction, a growing number of cases have applied a variable standard. These cases have examined numerous factors bearing on the harm caused by the loss of evidence. Specifically, courts have weighed 'the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial'. More flagrant prosecutorial conduct requires less of a showing of prejudice by defendant." (Citations omitted.)[9]

In the instant case, there was no evidence presented of intentional misconduct, bad faith, or suppression of evidence on the part of the police. Nor was a discovery motion made prior to the destruction of the evidence. The introduction of the bottle was not necessary to prove beyond a reasonable doubt the elements of assault with

[9] 70 Mich App 70, 77-78.

intent to commit great bodily harm less than murder.

Two witnesses testified that defendant threw a liquid, which was described by the treating physician as a "caustic substance", and the officer in charge testified that the bottle from which the liquid was thrown contained a hydrochloric acid label. Additionally, defendant admitted that she tossed the substance, which she described as a product to remedy a drain problem, at the complainant. Under these circumstances, defendant's conviction should not be vacated.

Last, defendant assigns as error the trial court's questioning of her in the presence of the jury. Relying on *People v Wichman*,[10] defendant contends that it was improper for the trial court to reveal its views to the jury concerning disputed factual issues. During the trial, defendant testified on direct examination that she obtained a bottle containing liquid in order to protect herself from complainant. Immediately following, also on direct examination, she testified that she obtained the bottle to remedy her mother's drain or roach problem.

Review of the record discloses that by interrogating the defendant, the trial court attempted to clarify the so patently inconsistent statements, but that the court did not suggest disbelief of defendant. The questioning by the trial court was limited in scope, material to an issue in the case, and did not convey any opinion which the court had regarding the issue.[11]

The factual setting here does not approach the

[10] 15 Mich App 110; 166 NW2d 298 (1968).

[11] See *People v Jones,* 44 Mich App 633, 636; 205 NW2d 611 (1973), where this Court held that prejudice did not result from the trial court's questioning.

magnitude present in *People v Bedsole,*[12] where the trial judge's examination of the defendant's alibi witness did not relate to an issue in the case and revealed that the trial judge viewed with disfavor the defendant's extramarital conduct.

The Michigan Supreme Court has held that a trial judge possesses the latitude to question a witness for the purpose of shedding light on something unclear in his testimony.[13] Such was the case here, as the trial judge, in attempting to clarify an ambiguity in defendant's testimony on direct examination, did not permit his views on the disputed issues of fact to be imparted to the jury.

Affirmed.

---

[12] 15 Mich App 459; 166 NW2d 642 (1969).

[13] *People v Salem,* 224 Mich 114, 115-116; 194 NW 485 (1923); *People v Fedderson,* 327 Mich 213, 219; 41 NW2d 527 (1950).