PEOPLE v BURGESS

Docket No. 83552. Submitted June 10, 1986, at Lansing. Decided August 4, 1986. Leave to appeal applied for.

Defendant, Douglas W. Burgess, Jr., was convicted following a jury trial in the Bay Circuit Court of first-degree murder, conspiracy to commit murder and inciting, inducing or exhorting another to commit murder. The trial court, Eugene C. Penzien, J., sentenced defendant to life imprisonment on the first-degree murder conviction and to not less than 70 years nor more than 105 years imprisonment on each of the other two convictions. Defendant appeals. *Held:*

1. The trial court's conduct and comments in questioning witnesses were not of such a nature as to unduly influence the jury and deprive defendant of his right to a fair and impartial trial. Furthermore, since manifest and serious error did not occur and defense counsel did not object at trial to the trial court's interrogation of the witnesses, the Court of Appeals declined to review defendant's allegations of trial court misconduct.

2. Error did not occur in regard to the prosecutor's questioning of witness Keith Fischer, an accomplice, regarding the plea agreement entered into by Fischer in exchange for his testimony.

3. Error did not occur in regard to the trial court's instructions to the jury concerning Fischer.

4. Evidence that defendant had borrowed certain books entitled "How to Kill" and that defendant requested Lance Cpl. Lasnier to help him kill an unidentified woman was relevant and properly admitted.

5. Error did not occur in regard to the trial court's jury

REFERENCES

Am Jur 2d, Appeal and Error §§ 702 *et seq.*
Am Jur 2d, Criminal Law §§ 443 *et seq.*
Am Jur 2d, Homicide §§ 41-53, 459 *et seq.*
Am Jur 2d, Trial §§ 573 *et seq.*
See the annotations in the Index to Annotations under Appeal and Error; Criminal Law; Homicide; Trial.

instructions regarding circumstantial evidence and conflicting evidence.

6. Defendant's conviction and sentence on each of the three counts did not violate the double jeopardy provisions of the United States and Michigan Constitutions. The crime of inciting, inducing or exhorting another to commit murder was intended by the Legislature to be a separate crime from the completed offense and from a conspiracy to commit the object offense. The crimes of conspiracy and incitement were intended by the Legislature to be separate crimes. Each of the offenses in this case involves proof of a fact not required by the other. There was different evidence introduced such that the same evidence was not necessarily used to prove one offense and thereafter used to prove the other offenses.

Affirmed.

Hood, J., concurred but wrote separately to note his belief that the testimony regarding defendant's borrowing of the books "How to Kill" or soliciting assistance in killing an unknown woman was not relevant to prove the premeditation of the murder of defendant's father. However, the claims were not preserved for appeal absent manifest injustice.

OPINION OF THE COURT

1. TRIAL — TRIAL PROCEEDINGS — WITNESSES — RULES OF EVIDENCE.

It is a trial judge's duty to control all trial proceedings and to limit the introduction of evidence and the argument of counsel to relevant and material matters; therefore, a trial judge may interrogate witnesses, whether called by the court or by a party; objections to the interrogation of a witness by a judge are to be made at the time of the interrogation or at the next available opportunity when the jury is not present (MCL 768.29; MSA 28.1052; MRE 614[b] and [c]).

2. CRIMINAL LAW — JUDICIAL CONDUCT — APPEAL — CONSTITUTIONAL LAW.

A trial judge has wide discretion and power in matters of trial conduct, however, if the judge's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed; a judge's comments or conduct pierce the veil of judicial impartiality when they are of such a nature as to unduly influence the jury and thereby deprive the defendant of his right to a fair and impartial trial (US Const, Am VI; Const 1963, art 1, § 20).

3. APPEAL — TRIAL — JUDICIAL CONDUCT.

The Court of Appeals generally will not review allegations of error based upon the conduct of the trial court where the

conduct was not objected to at trial, absent manifest and serious error.

4. CRIMINAL LAW — WITNESSES — CODEFENDANTS — PLEA AGREEMENTS.

The prosecutor in an action where there is a plea agreement between a witness and the prosecution which includes consideration for testimony against a codefendant must disclose the consideration to the jury if defense counsel so desires and is duty bound to correct any false testimony regarding the agreement.

5. EVIDENCE — APPEAL.

The admission or exclusion of evidence rests in the sound discretion of the trial judge; the exercise of such discretion will not be overturned on appeal absent a showing of a clear abuse of such discretion.

6. APPEAL — PRESERVING QUESTION — EVIDENCE.

An alleged error in the admission of evidence is not preserved for appeal where no objection was made to the admission of the evidence unless the failure to review the alleged error would result in manifest injustice.

7. CRIMINAL LAW — JURY INSTRUCTIONS — APPEAL.

Jury instructions are reviewed in their entirety on appeal to determine if reversible error occurred; the instructions are not to be extracted piecemeal in an effort to establish error requiring reversal; there is no error, even where the instructions are imperfect, if the instructions fairly presented to the jury the issues to be tried and successfully protected the rights of the defendant.

8. APPEAL — JURY INSTRUCTIONS — MISCARRIAGE OF JUSTICE.

A verdict will not be set aside based on an alleged error in the jury instructions where no objection was made to the alleged error at trial unless it resulted in a miscarriage of justice; a miscarriage of justice occurs when an erroneous or omitted instruction pertains to a basic and controlling issue in the case.

9. CRIMINAL LAW — JURY INSTRUCTIONS — EVIDENCE.

Instructing the jury that if the direct and circumstantial evidence, taken together, is open to two reasonable constructions, one indicating guilt and the other innocence, it is their duty to accept the construction indicating innocence is not required where the evidence against the defendant is strong circumstantial and direct evidence (CJI 4:2:02[7]).

10. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — FIRST-DEGREE MUR-
    DER — CONSPIRACY TO COMMIT MURDER — INCITING, INDUCING,
    OR EXHORTING ANOTHER TO COMMIT MURDER.
      A defendant's conviction and sentence for first-degree murder,
      conspiracy to commit the murder and inciting, inducing or
      exhorting another to commit the murder does not violate the
      double jeopardy provision of the Michigan Constitution; the
      Legislature intended to punish as separate crimes the com-
      pleted offense of murder, a conspiracy to commit the murder
      and inciting, inducing or exhorting another to commit the
      murder (Const 1963, art 1, § 15; MCL 750.157a, 750.157b,
      750.316; MSA 28.354[1], 28.354[2], 28.548).

11. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — FIRST-DEGREE MUR-
    DER — CONSPIRACY TO COMMIT MURDER — INCITING, INDUCING,
    OR EXHORTING ANOTHER TO COMMIT MURDER.
      A defendant's conviction and sentence for first-degree murder,
      conspiracy to commit the murder and inciting, inducing or
      exhorting another to commit the murder does not violate the
      double jeopardy provision of the United States Constitution
      where each of the offenses involves proof of a fact not required
      by the other and there was different evidence introduced such
      that the same evidence was not necessarily used to prove one
      offense and thereafter used to prove the other offenses (US
      Const, Ams V and XIV).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Martha G. Mettee,* Assistant Prosecuting Attorney, for the people.

*George C. Bush,* for defendant on appeal.

Before: BEASLEY, P.J., and D. F. WALSH and HOOD, JJ.

BEASLEY, P.J. Defendant, Douglas Wayne Burgess, Jr., was convicted by a jury of murder in the first degree, in violation of MCL 750.316; MSA 28.548, conspiracy to commit murder, in violation of MCL 750.157a; MSA 28.354(1), and inciting, inducing or exhorting another to commit murder, in violation of MCL 750.157b; MSA 28.354(2). Defendant was sentenced to life imprisonment for

first-degree murder and to not less than 70 years nor more than 105 years in prison on each of the other two convictions. Defendant appeals as of right, raising five issues.

Defendant first claims that the trial judge's comments and questioning of the witnesses deprived him of a fair trial. MCL 768.29; MSA 28.1052 provides that it is the duty of the trial judge to control all proceedings during the trial and to limit the introduction of evidence and the argument of counsel to relevant and material matters. In conjunction with this duty, the trial court may interrogate witnesses, whether called by the court or by a party.[1] MRE 614(c) requires that objections to the interrogation of a witness by a judge be made at the time of the interrogation or at the next available opportunity when the jury is not present.

Michigan case law provides that a trial judge has wide discretion and power in matters of trial conduct.[2] However, this power is not unlimited. If a trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed.[3] The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments "were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial."[4]

Generally, this Court will not review allegations of error based upon the conduct of the trial court

---

[1] MRE 614(b).

[2] *People v Cole,* 349 Mich 175; 84 NW2d 711 (1957).

[3] *People v London,* 40 Mich App 124, 129-130; 198 NW2d 723 (1972); *People v Wilson,* 21 Mich App 36, 37-38; 174 NW2d 914 (1969).

[4] *People v Rogers,* 60 Mich App 652, 657; 233 NW2d 8 (1975), lv den 406 Mich 918 (1979), citing *Wilson, supra,* p 37; US Const, Am VI; Const 1963, art 1, § 20.

where the conduct was not objected to at trial, absent manifest and serious error.[5]

In the within case, defendant does not indicate the specific questioning of witnesses by the trial court that pierced the veil of impartiality. However, in his statement of facts, defendant reproduces at length the questioning of several witnesses by the trial court, but does not indicate how this questioning pierced the veil of judicial impartiality and how it prejudiced defendant.

Our review of the trial court's interrogation indicates that possibly the questioning was designed to elicit additional relevant information or to clear up ambiguities in the witnesses' testimony. If so, such interrogation by the trial court is proper.[6] While at times skirting the edge, the trial court's conduct, comments and questions did not in fact clearly pierce the veil of judicial impartiality. Consequently, we do not conclude that the trial court's conduct and comments were of such a nature as to unduly influence the jury and deprive defendant of his right to a fair and impartial trial.

Furthermore, defense counsel never objected at trial to the trial court's interrogation of the witnesses. Therefore, absent manifest and serious error, this Court should not review defendant's allegations of error based upon the conduct of the trial court.[7] We hold that manifest and serious error has not occurred and, therefore, we do not review defendant's allegations of trial court misconduct.

Second, defendant claims that the prosecuting

---

[5] *People v Bouknight,* 106 Mich App 798, 807; 308 NW2d 703 (1981), rev'd on other grounds 419 Mich 458, 490 (1984).

[6] *People v Lane,* 127 Mich App 663, 671; 339 NW2d 522 (1983); *People v Atkins,* 58 Mich App 503, 504-505; 228 NW2d 435 (1975), lv den 399 Mich 845 (1977).

[7] *Bouknight, supra,* p 807; MRE 614(c).

attorney's direct examination of his chief witness, Keith Fischer, and his comments during final argument regarding Fischer's plea bargain agreement, coupled with the trial court's jury instructions regarding Fischer's possible penalty, were so misleading as to improperly bolster Fischer's credibility and warrant reversal.

Where there is a plea agreement between a witness and the prosecution which includes consideration for testimony against a codefendant, the prosecutor must disclose the consideration to the jury if defense counsel so desires and is duty bound to correct any false testimony regarding the same.[8]

In the within case, Fischer testified that he entered into a plea agreement in consideration for his testimony. He stated that the prosecutor agreed to charge him only with second-degree murder and to drop charges of conspiracy to commit murder and felony-firearm. Additionally, the prosecutor agreed to recommend that Fischer not be given a nonparolable sentence. However, Fischer testified that it was his understanding that the trial judge could still give him "natural life."

Defendant contends that because the Supreme Court has ruled that a second-degree murder conviction is parolable, citing *People v Johnson,*[9] Fischer's testimony that he could be sentenced to natural life was misleading and false. We do not agree. By questioning Fischer, the prosecutor clearly brought before the jury the plea agreement that had been made with Fischer, and we find nothing false or incorrect as far as the plea agreement or the understanding of Fischer as to the plea agreement.

---

[8] *People v Woods,* 416 Mich 581, 601-604; 331 NW2d 707 (1982); *People v Lytal,* 415 Mich 603, 612; 329 NW2d 738 (1982).

[9] 421 Mich 494; 364 NW2d 654 (1984).

In this connection, defendant also argues that the instructions of the trial court improperly bolstered the credibility of Fischer. The court .instructed the jury as follows:

> In deciding whether or not to believe an accomplice, you should be guided by the following considerations.
>
> You may consider whether there has been any reward or inducement offered which may have caused him to testify falsely. You may consider whether the testimony was affected by the witness' being granted immunity from punishment, receiving a promise of leniency or being allowed to plead guilty to a lesser offense. You may consider whether the testimony is falsely slanted in such a way as to place guilt upon the Defendant in order to further the witness' own interests or any other bias or motive which may have prompted or induced the witness in his testimony.
>
> You should also consider how the witness impressed you with his appearance on the witness stand. So, to summarize, you should examine an accomplice's testimony with greater care than you would use to examine the testimony of an ordinary witness. It should be carefully and closely examined before a conviction is based upon it.

These instructions informed the jury as to what they could consider in determining whether or not Fischer testified truthfully, but did not bolster Fischer's credibility.

Third, defendant claims that the trial court improperly admitted testimony that defendant had borrowed books entitled "How to Kill" and testimony that defendant requested Lance Cpl. Lasnier to help him kill an unidentified woman. The admission or exclusion of evidence rests in the sound discretion of the trial judge, and the judge's exercise of discretion will not be overturned on appeal absent a showing of a clear abuse of such discre-

tion.[10] Where no objection is made to the admission of the evidence, a claimed error is not preserved unless the failure to review the error would result in manifest injustice.[11]

At trial, Lance Cpl. Lasnier was questioned regarding defendant's borrowing of several books from him. Defense counsel objected, stating:

> *Mr. Denton:* Yes. I anticipate what he's going to say because he testified at preliminary examination on a set of books called "How to Kill" Volumes one through five. My investigation has revealed that the books on how to kill have to do with hand to hand combat and strictly military methods and the fact that Mr. Burgess borrowed them really has absolutely nothing to do with this case and is not indicative of whether or not he planned a conspiracy or incited anyone to shoot his father.

Lasnier was then questioned out of the presence of the jury and testified that the books were basically manuals that would not have much military application except if a guerilla force were used. He further testified that the books were mainly how one- or two-man teams could assassinate or kill an individual. The witness also testified that after the books had been lent to defendant, defendant was constantly talking about different ways of killing someone and presented a scenario about how to plan a perfect murder. The trial court found that this evidence was relevant and its probative value was not outweighed by its prejudicial effect. Thereafter, the following colloquy occurred between the court and defense counsel:

> *The Court:* I just will note that it sounded to me

---

[10] *People v O'Brien,* 113 Mich App 183, 203; 317 NW2d 570 (1982).

[11] *People v Browning,* 106 Mich App 516, 524; 308 NW2d 264 (1981), lv den 419 Mich 852 (1984).

like the potential objection was based on an erro-
neous premise, so if you have any objection, I'd
like to hear it, if you still have one.

*Mr. Denton:* I think that the objection was— If
the premise was erroneous, we had no way of
knowing—

*The Court:* The premise was that the books
didn't have anything to do with what he's—

*Mr. Denton:* We still believe our interpretation
of the books is right, but inasmuch as the witness
has testified they have something else—they have
to do with something else, I don't have a basis for
the objection.

Thus, it would appear that defense counsel with-
drew his objection to testimony regarding defen-
dant's borrowing of the books entitled "How to
Kill" and, since the objection was withdrawn, this
claimed error was not preserved for appeal. Fur-
thermore, the evidence was relevant and its proba-
tive value was not outweighed by any prejudicial
effect.

After testifying that defendant had borrowed
five volumes of a book entitled "How to Kill" and
that defendant thereafter constantly talked about
different ways of killing someone, Lasnier testified
that defendant asked him to go to Bay City and
kill a woman who was blackmailing defendant's
father. Lasnier said defendant told him he would
get $2,000 for the killing. There was no objection
to this testimony. Since there was no objection at
trial to this testimony, defendant has not pre-
served this issue for appeal and no manifest injus-
tice results.

Furthermore, the evidence was relevant and
properly admitted. Defendant's borrowing of the
books, the change of defendant's behavior (con-
stantly talking about the perfect crime) and the
fact that he suggested that Lasnier help him carry

out a murder would be relevant in showing that
the murder of defendant's father was premedi-
tated. In addition, this evidence was properly ad-
mitted under MRE 404(b), regarding similar acts.[12]

Fourth, defendant claims that the trial court's
instructions on circumstantial evidence and con-
flicting evidence were erroneous. Defendant con-
tends that the trial court's failure to instruct the
jury as provided in paragraph (7) of CJI 4:2:02 is
error. This provision provides:

> (7) If the direct and circumstantial evidence,
> taken together, is open to two reasonable construc-
> tions, one indicating guilt and the other innocence,
> it is your duty to accept the construction indicat-
> ing innocence.

The trial court instructed the jury on circum-
stantial evidence as follows:

> It is not necessary that every fact be proven
> directly .by a witness or an exhibit. A fact may be
> proven indirectly by other facts or circumstances
> from which it usually and reasonably follows. This
> indirect evidence is sometimes called circumstan-
> tial evidence, which you are to consider with other
> evidence in the case.
> There is no inherent difference in the quality of
> direct and indirect evidence. Indirect evidence can
> be and often is more compelling than direct evi-
> dence.
> When evidence is offered of a fact or group of
> facts for the purpose of proving an element of the
> offense, you are being asked to apply your reason-
> ing abilities and to draw reasonable inferences
> from those facts. Since the elements of a criminal
> offense must be proven beyond a reasonable doubt,
> that standard must be kept in mind when examin-
> ing the evidence, whether the evidence is direct or
> indirect.

---

[12] See *People v Golochowicz*, 413 Mich 298; 319 NW2d 518 (1982).

Defense counsel did not object to any of the trial court's jury instructions.

Jury instructions are reviewed in their entirety in order to determine if reversible error occurred and are not extracted piecemeal in an effort to establish error requiring reversal.[13] Even where instructions are imperfect, there is no error if the instructions "fairly presented to the jury the issues to be tried and successfully protected the rights of the defendant."[14]

A verdict will not be set aside based on an alleged error in the jury instructions where no objection was made to the alleged erroneous instruction at trial unless it resulted in a miscarriage of justice. A miscarriage of justice occurs when an erroneous or omitted instruction pertains to a basic and controlling issue in the case.[15]

In the within case, defense counsel did not object to the omission of paragraph (7) of CJI 4:2:02. Since the omitted paragraph of this instruction does not pertain to a basic and controlling issue in this case, defendant's failure to object bars review of the claimed error. Furthermore, the trial court did not err by failing to give this part of the instruction. Several panels of this Court have held that the giving of paragraph (7) of CJI 4:2:02 is proper only where circumstantial evidence against a defendant is weak.[16] Here, the evidence against defendant was strong circumstantial and direct

---

[13] *People v Bender,* 124 Mich App 571, 574; 335 NW2d 85 (1983); *People v Stewart,* 126 Mich App 374, 377; 337 NW2d 68 (1983).

[14] *People v Kalder,* 284 Mich 235, 241-242; 279 NW 493 (1938); *Bender, supra,* pp 574-575.

[15] *People v Vicuna,* 141 Mich App 486, 492-494; 367 NW2d 887 (1985); *People v Seabrooks,* 135 Mich App 442, 454; 354 NW2d 374 (1984).

[16] *People v Cook,* 131 Mich App 796, 809-810; 347 NW2d 720 (1984); *People v Hatch,* 126 Mich App 399, 403-405; 337 NW2d 79 (1983); *People v Reese,* 126 Mich App 132; 337 NW2d 7 (1983).

evidence. Thus, we do not believe that paragraph (7) of the instruction was required.

Defendant also contends that the trial court erroneously instructed the jury regarding conflicting evidence. Specifically, defendant claims that the trial court erred by not instructing the jury pursuant to CJI 3:1:12. Prior to July 13, 1984, the proposed CJI 3:1:12 (conflicting testimony) provided as follows:

(1) If there is a conflict in the testimony of witnesses, it is your responsibility as jurors to determine, if you can, what testimony you believe to be true.

(2) Consider whether the conflict involves a matter of importance or merely some detail, and whether it involves an honest mistake or a deliberate falsehood. It is possible that a witness testified honestly, but with an inaccurate perception or memory of events. Two or more persons witnessing the same event may see or hear it differently. In attempting to decide which testimony is true, that is, accurate, you may find it helpful to consider which testimony is supported by other evidence.

(3) However, if you have a reasonable doubt as to which testimony you believe, it is your duty to accept the testimony favorable to the defendant.

On July 13, 1984, the Michigan State Bar Special Committee on Standard Criminal Jury Instructions deleted CJI 3:1:12 from its recommendations. In an amended recommendation, paragraph (2) now appears in CJI 3:1:11(2) and paragraph (3) appeared in proposed CJI 3:1:03(3). Of course, neither the proposed amended CJI 3:1:03(3) nor the earlier proposed instruction were ever adopted by the Supreme Court.

As to conflicting evidence, the trial judge instructed the jury as follows:

If there's a conflict in the testimony of witnesses, consider whether the conflict involves a matter of importance or merely some detail, and whether it involves an honest mistake or a deliberate falsehood. It's possible that a witness testified honestly, but with an inaccurate perception or memory of events. Witnesses to the same event may see it or hear it differently. In attempting to decide which testimony is true, that is, accurate, you may find it helpful to consider which testimony is supported by other evidence.

At trial, defendant did not object to the trial court's jury instruction, thus precluding appellate review because the alleged erroneous omission of this instruction does not pertain to a basic and controlling issue in this case. Furthermore, we hold that the trial court did not err by omitting paragraph (3) of the criminal jury instruction.

In *People v Roby*,[17] the trial court instructed the jury as follows concerning conflicting testimony:

If there is a conflict in the testimony of witnesses it is your responsibility, as jurors, to determine, if you can, what testimony you believe to be true. Consider the extent to which conflicting testimony is supported by other evidence and whether the conflict involves a matter of importance or merely some detail.

On appeal, this Court found that the trial court's omission of paragraph (3) of the standard instruction was not error in light of the other instructions on the burden of proof and presumption of innocence.[18]

Fifth and last, defendant claims that his conviction and sentence on each of the three counts violates the double jeopardy provisions of the fed-

[17] 145 Mich App 138, 142-143; 377 NW2d 366 (1985).

[18] *Id.*, p 143, where the instruction was nearly identical to the one given here.

eral and Michigan constitutions.[19] It is defendant's contention that because the prosecutor relied upon the same utterances or words of defendant to prove each crime, these three convictions cannot withstand a double jeopardy challenge.

In *People v Robideau*,[20] the Supreme Court engaged in extensive analysis of previous United States and Michigan Supreme Court decisions involving double jeopardy, recognizing that the double jeopardy clause protects a defendant from three forms of double jeopardy:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

As in *Robideau,* the within case is concerned with the third protection, the protection against multiple punishments for the same offense. In *Robideau,* the Supreme Court emphasized that the only interest of the defendant protected by the multiple punishment aspect of the double jeopardy clause "is in not having more punishment imposed than that intended by the Legislature." 419 Mich 485. The *Robideau* Court ruled that the federal *Blockburger* test[21] (prohibition against double jeopardy not violated when a conviction on each offense requires proof of a fact not required by the other offense) is of no aid in making the ultimate determination of whether the Legislature intended separate crimes. The Supreme Court then abandoned the *Blockburger* test, "preferring instead to

---

[19] US Const, Am V and Am XIV; Const 1963, art 1, § 15.

[20] 419 Mich 458, 468; 355 NW2d 592 (1984), quoting *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

[21] *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932).

use traditional means to determine the intent of the Legislature: the subject, language, and history of the statutes."[22]

The *Robideau* Court advanced the following general principles to guide future courts in this area of double jeopardy analysis:

> Statutes prohibiting conduct that is violative of distinct social norms can generally be viewed as separate and amenable to permitting multiple punishments. A court must identify the type of harm the Legislature intended to prevent. Where two statutes prohibit violations of the same social norm, albeit in a somewhat different manner, as a general principle it can be concluded that the Legislature did not intend multiple punishments. For example, the crimes of larceny over $100, MCL 750.356; MSA 28.588, and larceny in a building, MCL 750.360; MSA 28.592, although having separate elements, are aimed at conduct too similar to conclude that multiple punishment was intended.
>
> A further source of legislative intent can be found in the amount of punishment expressly authorized by the Legislature. Our criminal statutes often build upon one another. Where one statute incorporates most of the elements of a base statute and then increases the penalty as compared to the base statute, it is evidence that the Legislature did not intend punishment under both statutes. The Legislature has taken conduct from the base statute, decided that aggravating conduct deserves additional punishment, and imposed it accordingly, instead of imposing dual convictions. [*Robideau, supra,* pp 487-488.]

As previously indicated, in the within case, defendant was convicted of three crimes: (1) first-degree murder (aiding and abetting); (2) conspiracy to commit murder; and (3) inciting, inducing or

---

[22] *Robideau, supra,* p 486.

exhorting another to commit murder. The first-degree murder conviction, the unlawful killing of another human being, obviously involves social norms distinct from the norms violated by the crime of conspiracy. It has often been held that a defendant may be convicted and punished for a conspiracy and the substantive crime which is its object.[23] Furthermore, a conviction of conspiracy will not merge with the conviction of the completed offense unless the completed offense requires the participation and cooperation of two or more persons. Thus, defendant's convictions of conspiracy to commit murder and first-degree murder do not violate the double jeopardy clause of the Michigan Constitution, as the intent of the Legislature is to punish as separate crimes the completed offense of murder and the conspiracy to commit the murder.

However, a close question is raised where, as here, defendant is convicted of inciting, inducing or exhorting another to commit murder in addition to conspiracy and first-degree murder. In *People v Rehkopf*,[24] the Supreme Court analyzed the incitement provision of the Penal Code under which defendant herein was charged with inciting, inducing or exhorting another to commit murder. MCL 750.157b; MSA 28.354(2) (hereafter § 157b) provides:

> Any person who incites, induces or exhorts any other person to unlawfully burn any property, to murder, to kill, to wound or to commit an aggravated or felonious assault on any person or to do any act which would constitute a felony or circuit court misdemeanor, that may endanger or be likely to endanger the life of any person, or who aids and abets in any such inciting, inducing or

---

[23] *People v Carter*, 415 Mich 558, 569; 330 NW2d 314 (1982).
[24] 422 Mich 198; 370 NW2d 296 (1985).

exhorting shall be punished in the same manner as if he had committed the offense, incited, induced or exhorted.

The *Rehkopf* Court stated that the legislative history of this provision, the circumstances that led to its enactment, and the punishment for solicitation prescribed in other jurisdictions "suggest that § 157b is a special kind of accomplice statute designed to enlarge the scope of accomplice liability in certain limited situations, and not a codification of the common-law offense of solicitation enlarging the punishment when certain dangerous felonies and misdemeanors are involved."[25] The court went on to hold that § 157b "does not subject a person to criminal responsibility for utterances that do not result in the commission of the offense sought to be committed."[26]

Section 157b of the Penal Code was enacted as an aftermath of the 1967 civil disturbance in Detroit, when it appeared that the Penal Code did not provide adequate means of punishing general urgings to commit life-endangering offenses. This section was added "so that a person who 'incite[d], induce[d] or exhort[ed]' other persons to actually commit a life-endangering offense would be subject to the same maximum penalty as the person who committed the offense without regard to whether there was any further nexus or concert of action between the speaker and the listener/actor."[27]

Hence, we believe that the crime of inciting, inducing or exhorting another to commit murder was intended by the Legislature to be a separate crime from the completed offense and from a conspiracy to commit the object offense. The incite-

[25] *Id.,* pp 204-205.
[26] *Id.,* p 205.
[27] *Rehkopf, supra,* p 208.

ment statute involves social norms distinct from the norms violated by the killing of another or from an unlawful agreement, which is the gist of a conspiracy charge.

On the other hand, conspiracy, as briefly noted above, is concerned with the increased danger of group action. Such collective criminal agreement may be said to present a greater potential threat to the public than individual action. Concerted action increases the likelihood that the criminal goal will be successfully attained and decreases the probability that the individuals will withdraw from the criminal design.[28]

Therefore, we believe that conspiracy and incitement were intended by the Legislature to be separate crimes. Thus, we conclude that defendant's three convictions do not violate the double jeopardy provisions of the Michigan Constitution.

Defendant also contends that his convictions violate the federal double jeopardy clause contained in the United States Constitution. The federal test, as stated by the United States Supreme Court in *Blockburger, supra,* is as follows:

> Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. [Blockburger, supra, 284 US 304.]

Thus, the prohibition against double jeopardy on the federal level is not violated when a conviction on each offense requires proof of a fact which the others do not. In the within case, defendant was

[28] *People v Carter, supra,* p 570, quoting *Callanan v United States,* 364 US 587, 593-594; 81 S Ct 321; 5 L Ed 2d 312 (1961).

convicted of first-degree murder, which is statuto-
rily defined as "[m]urder which is perpetrated by
means of poison, lying in wait, or other wilful,
deliberate, and premeditated killing."[29] The crime
of conspiracy refers to "[a]ny person who conspires
together with 1 or more persons to commit an
offense prohibited by law, or to commit a legal act
in an illegal manner."[30] Conspiracy requires a
mutual agreement to commit a criminal act or to
accomplish a legal act by unlawful means.[31] Sec-
tion 157b provides:

> Any person who incites, induces or exhorts any
> other person to unlawfully burn any property, to
> murder, to kill, to wound or to commit an aggra-
> vated or felonious assault on any person or to do
> any act which would constitute a felony or circuit
> court misdemeanor, that may endanger or be
> likely to endanger the life of any person, or who
> aids and abets in any such inciting, inducing or
> exhorting shall be punished in the same manner
> as if he had committed the offense, incited, in-
> duced or exhorted. [MCL 750.157b; MSA 28.354(2).]

Each of the offenses in the within case involves
proof of a fact not required by the other. Conspir-
acy requires proof of the unlawful agreement;
nothing further is required. First-degree murder
requires proof of an unlawful killing of another
with premeditation and deliberation. A conviction
under § 157b requires proof of utterances that
induced, incited or exhorted another to commit a
life-endangering crime (in this case, murder) and
the completed offense. Thus, incitement requires
proof of the completed offense, whereas conspiracy
does not. Conspiracy requires proof of an unlawful

---

[29] MCL 750.316; MSA 28.548.

[30] MCL 750.157a; MSA 28.354(1).

[31] *Carter, supra,* p 567.

agreement, whereas a conviction under § 157b does not. First-degree murder obviously includes several elements not statutorily necessary for conviction of conspiracy or incitement under § 157b. Hence, under a strict *Blockburger* analysis, these three offenses are distinct.

However, in *Harris v Oklahoma*,[32] the United States Supreme Court recognized that a double jeopardy claim may be based on a greater and necessarily included offense as charged and proven instead of relying solely on the statutory elements. Applying the *Blockburger* test in this manner results in a double jeopardy violation where the same evidence used to prove one offense is used to prove the other offense.[33]

In the within case, defendant argues that the same words or utterances were used to prove all three offenses. Defendant states that the same words were used to prove that he aided and abetted the commission of first-degree murder, the unlawful agreement and the incitement. However, even under the application of *Blockburger,* we believe the three offenses are sufficiently distinct as proven and do not violate the federal double jeopardy provision.

At trial, the prosecutor introduced evidence that defendant and Fischer talked about and planned the killing of defendant's father while in Washington. Further evidence showed that defendant called Fischer at his home in Fargo, North Dakota, while both were on leave. Defendant asked Fischer if he was going to fly to Michigan to complete their plan. Thus, this evidence was sufficient to prove the crime of conspiracy to commit murder. Furthermore, the prosecutor introduced evidence

[32] 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977).

[33] See in this regard, *People v Dickens,* 144 Mich App 49, 53-54; 373 NW2d 241 (1985), lv den 424 Mich 872 (1986).

that defendant picked Fischer up at the Tri-City Airport and brought him to his father's house, where he introduced Fischer to his father. Thereafter, defendant set up a pizza and beer party with his father, his brother and Fischer. Defendant then took Fischer to a motel near his father's house and drew a map in order that Fischer could find his way back to defendant's father's house to kill him. We believe that this evidence was sufficient to establish the aiding and abetting charge, thus subjecting defendant to punishment for first-degree murder. Lastly, the prosecutor introduced evidence that defendant spoke with Fischer while Fischer was at defendant's father's house. According to Fischer, defendant asked him why he did not go through with their plan and exhorted Fischer to kill his father. Such evidence is sufficient to prove the crime of inciting, inducing or exhorting another to commit the crime of murder. Consequently, there was different evidence introduced such that the same evidence was not necessarily used to prove one offense and thereafter used to prove the other offenses. Therefore, we conclude that defendant's three convictions do not violate the double jeopardy provision of the federal constitution.

Affirmed.

D. F. Walsh, J., concurred.

Hood, J. (concurring). I am not convinced that testimony concerning the borrowing of the books on "How to Kill" or the solicitation of assistance in killing a woman who was allegedly blackmailing defendant's father was relevant to prove the premeditation of the murder of defendant's father. Since, however, objection to the former testimony was withdrawn, and no objection was made to the latter, the claims are not preserved for appeal absent manifest injustice.